**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| DAVID CHENG, M.D., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No.: 1:11-cv-10007 |
| ) | |
| LAURA ROMO, M.D., ) | |
| ) | |
| Defendant. ) | |

**JOINT PRETRIAL MEMORANDUM**

Pursuant to the Court's November 29, 2012 Order (*see* Docket Entry No. 36) and Local Rule 16.5(d), the parties, plaintiff David Cheng, M.D. ("Cheng" or "Plaintiff") and defendant Laura Romo, M.D. ("Romo" or "Defendant"), hereby submit this Joint Pretrial Memorandum.

**I.    SUMMARY OF THE EVIDENCE OFFERED**

    **A.    Plaintiff's Summary of the Evidence Offered**

This case concerns the unlawful interception of electronic communications by Romo from a personal e-mail account of Cheng, her business partner at Advanced Radiology, Inc. ("Advanced"). The evidence will show that Cheng provided Romo his personal e-mail account password in 2000 for the limited purpose of enabling her to access specific consultant e-mails or medical reports at Cheng's request. Cheng only requested that Romo access his personal e-mail account on approximately six occasions. In or about 2003, due to changes in Advanced's computer system, the need for Romo to access Cheng's personal e-mail was virtually eliminated. Romo did not access Cheng's personal e-mail account for another four years when, in or about September 2007, she accessed Cheng's account after visiting a lawyer concerning various legal matters related to her relationship with Advanced.

Romo was not authorized to and did not seek permission from Cheng to access his personal e-mail account in or after 2007, admits she was uncomfortable when she accessed Cheng's personal e-mail account, claims to have only accessed Cheng's e-mail from her son's computer, and admits to accessing Cheng's personal e-mail account on at least five occasion in 2007 and thereafter.  Despite claiming a legitimate business purpose for accessing Cheng's e-mail, Romo only printed e-mails from Cheng's account (which she gave to her husband and were ultimately produced by him in the course of another litigation) between Cheng and an employee containing sexual overtones.  Romo did nothing upon her discovery of these e-mails and later discarded the only computer she claims she used to access Cheng's personal e-mail account.

      **B.**      **Defendant's Summary of the Evidence Offered**

Cheng brought this suit at the behest of Roman Klufas, M.D., President of Advanced Radiology, Inc. ("Advanced"), to gain leverage in a larger dispute between Romo and Klufas initiated after Romo's wrongful termination and minority freezout from Advanced.  Even if Cheng can establish liability, he admitted at his deposition that he has suffered no monetary damages as a result of Romo's conduct in accessing his emails.

In 2007, Romo had become aware of self-dealing and secrecy in the management of Advanced.  When she began asking questions and seeking financial information she was legally entitled to, she was further ostracized by her fellow shareholders.   At that point, Romo accessed Cheng's business email account (to which he had voluntarily given her unrestricted access) no more than five times for the legitimate purpose of obtaining business-related information about Advanced, its finances and its management, from which she had been frozen out.   The emails also corroborated other preexisting evidence of an illicit affair between Cheng and a female subordinate employee, and revealed that this relationship was driving management decisions at

Advanced that were against Romo's interests.  Underlying these events, Advanced utilizes an employee manual that: (i) prohibited the sexually suggestive emails at issue; (ii) authorized their monitoring by Romo; and (iii) eliminated any privacy protection Cheng might otherwise have expected would apply to his conduct in sending and receiving such email.

## II.     STIPULATED FACTS

1. In 2000, Romo and Cheng joined Advanced Radiology, Inc. ("Advanced"), a Rhode Island radiology practice founded by Dr. Roman Klufas ("Klufas").

2. Romo and Cheng are Board certified radiologists.

3. Cheng provided his Yahoo! e-mail password to Romo for his dcheng02818@yahoo.com e-mail address in 2000.

4. In 2003, Romo and Cheng became shareholders of Advanced with Dr. Klufas. Later, Dr. Krishanu Gupta also became a shareholder.

5. Romo's husband, Dr. John D. Romo ("John"), was hired by Advanced in or about 2001.

## III.    CONTESTED ISSUES OF FACT

### A.     Plaintiff's Statement of Contested Facts

1. Romo and Cheng both had practiced and studied under Klufas at Brigham & Woman's Hospital in Boston.

2. Cheng opened a Yahoo! e-mail account, with an e-mail address of dcheng02818@yahoo.com, for his personal use in or shortly before July 2000.

3. Cheng provided Romo with his Yahoo! e-mail password over the phone while he was driving his car so that she could read a specific consultant e-mail or open a specific medical report.

4. Cheng's Yahoo! e-mail account was a personal account.

5. Cheng granted Romo permission to access the account on a "single action" basis at Cheng's request for the limited purpose of reading specific consultant e-mails or medical reports that required review by a doctor when Cheng was unable to review his e-mail.

6. Romo understood that Cheng's Yahoo! e-mail account was a personal account and that Cheng granted her permission to access the e-mail account for the limited purpose of reviewing specific consultant e-mails or medical reports when requested by Cheng.

7. Romo gave Cheng the password to her e-mail account so that he could access similar reports while she was out of the office.

8. Cheng's and Laura's need to access one another's e-mail became rare after Advanced acquired a computer system in August 2002 that allowed them to sign one another's reports without the use of e-mail.

9. Cheng's and Laura's need to access each other's e-mail became even more rare after Advanced hired a musculoskeletal system specialist, Dr. Krishanu Gupta, which obviated the need to engage the consultants they had been using.

10. There were at most six occasions when Cheng authorized Romo to access his Yahoo! e-mail account.

11. Prior to September 2007, Romo never reviewed any of Cheng's e-mail other than e-mail related to consultant comments or medical reports.

12. Romo had no discussions with Cheng about his e-mail account after 2002.

13. Romo never asked for permission to read Cheng's personal e-mail.

14. Romo did not access Cheng's e-mail account in 2005, 2006 or 2007, until she accessed in late September 2007.

15. After being hired by Advanced, Romo's husband, John, became Advanced's office administrator with oversight responsibility over the technicians and other employees.

16. Relationships between John and Klufas, Cheng, and Gupta deteriorated in 2007.

17. John was placed on probation in September 2007.

18. Shortly after the probation letter was issued, Romo went to see a lawyer.

19. After meeting with her lawyer, Romo logged into Cheng's e-mail account and admits to doing so on at least five occasions after September 2007. Romo read many of Cheng's e-mails and printed some of them.

20. Romo accessed Cheng's e-mail account in 2007 and thereafter from her teenage son's computer, which was located in his bedroom. Romo never used her son's computer for any purpose other than to review Cheng's e-mails.

21. Romo used her son's computer to access Cheng's e-mail because she was uncomfortable going through Cheng's e-mail and did not want to use her computer.

22. Romo did not want to stay online for a long time while she was reviewing Cheng's e-mail in and after 2007.

23. When Romo reviewed Cheng's e-mail in and after 2007, she reviewed e-mails dating at least as far back as March 2006.

24. The only e-mails Romo printed from Cheng's account in or after 2007 were e-mails between Cheng and another employee that contained sexual overtones and that she never shared with her partners at Advanced.

25. Romo never asked Cheng for permission to review his e-mail or told him that she had accessed his e-mail account in or after 2007.

26. Romo did not tell any of her partners at Advanced that she had accessed Cheng's

e-mail in or after 2007.

27. Romo discarded the computer she used to access Cheng's e-mail account in or after 2007.

28. Romo secretly recorded a meeting with her partners at Advanced, twice recorded conversations with an employee without telling that employee, and attempted to break into an employee's filing cabinet that she knew contained personal items.

29. Advanced's Employee Policy and Procedures Manual (the "Employee Manual") provides that the "policies and procedures [in the Employee Manual] are intended to be guides to management and merely descriptive of suggested procedures to be followed."

30. The introduction section of the Employee Manual states that "Advanced Radiology's management reserves the right to revoke, change or supplement guidelines at any time without notice."

31. The Employee Manual contains an acknowledgement of receipt signature page that acknowledges that changes to the policies "will be communicated to me by my supervisor or through official notices."

32. The Employee Manual contains a "Statement of Commitment to Employees" that, among other things, provides "[w]e believe that each employee's interest can best be represented through direct, honest discussions with his or her supervisor or manager" and acknowledges "[m]anagement's commitment to provide a work environment and leadership which unites employees . . ."

33. The Employee Manual contains an "Employee Orientation" provision that has a stated goal of "establish[ing] good employee-employer communication," and an "Evaluation Period" provision that provides that a "supervisor will evaluate the employee's work."

34. The Employee Manual provides that "[a]ny employee leaving the facility for meals or any other non-business-related reason must be clocked out during their absence from the facility."

35. The Employee Manual contains an Internet Usage section that states that "[i]nternet usage is subject to monitoring at any time." That section further provides that "[a]ll of an employee's online communications and internet visits made during business hours are not considered to be private."

36. Cheng never executed an acknowledgement of receipt of the Employee Manual.

37. The terms of Advanced's Employee Manual did not apply to Cheng or any of the other business owners.

38. Katherine Lagor, the Advanced employee responsible for enforcing the Employee Manual, does not enforce the manual's provisions with regard to her superiors, the radiologists.

39. The introduction section of the Employee Manual distinguishes between "Advanced Radiology employees and staff" and "management."

40. The Employee Manual is not distributed to everyone at Advanced.

41. Most of the Employee Manual's provisions, including the internet usage provision, are not enforced by Advanced.

42. Advanced employees are permitted to use their work computers for personal e-mail.

**B.    Defendant's Statement of Contested Facts**

1. Prior to Cheng's becoming employed at Advanced, he was a student of Romo's at Brigham & Women's Hospital ("Brigham and Women's") in Boston.

2.  Cheng, Klufas and Krishanu Gupta, M.D. (another radiologist) each own equal interests in Advanced. Romo owns a minority share.

3.  Klufas founded Advanced, is its president, and unilaterally makes most of its employment and strategic decisions.

4.  Advanced does not issue email accounts to its employees. Therefore, its employees do not use email accounts featuring their name or initials followed by "@advanced.com" or a similar such address. Instead, Advanced's employees use web-based email accounts for purposes of conducting business email.

5.  Cheng maintains an email account provided by Yahoo! with the address dcheng02818@yahoo.com. This is Cheng's business email account.

6.  In or around July of 2000, Cheng and Romo exchanged email passwords to their respective Yahoo! email accounts.

7.  Cheng did not restrict Romo's access in any way. Romo understood that she was authorized to access Cheng's account for business purposes. Cheng did not change his password from the time he gave it to Romo until at least late 2010.

8.  Cheng has oversight and management control over Patricia Cunningham, an ultrasound technologist at Advanced.

9.  In sworn testimony, John Romo, M.D. (Defendant Romo's husband), then an employee at Advanced, reported walking in on Cheng and Cunningham while apparently engaged in or having just completed a sexual act in an ultrasound room at Advanced in the fall of 2006.

10. John Romo and Cunningham had a verbal exchange in early September, 2007 where he accused Cunningham of sneaking out of the office during work hours.

11. Immediately thereafter, at the behest of Cheng and Cunningham, and after discussions among Klufas, Cheng and Gupta excluding Romo, Klufas placed John Romo on probation. John Romo was later stripped of his responsibilities in overseeing Cunnigham's department.

12. Klufas maintained control of Advanced's finances to the exclusion of the other shareholders, and he alone entered financial information into its Quickbooks software accounting system.

13. In or about the summer of 2007, John and Laura Romo questioned a receivable amount carried on Advanced's books. They reported that they had found approximately $4,000,000 of receivables that were not being handled properly and lodged a complaint at the company.

14. Laura Romo began looking for information about the receivable amount, directing those questions toward Klufas, only to be stonewalled in her attempts.

15. At the same time, Cheng, Klufas and Gupta began increasingly excluding Romo from the affairs and management of the company.

16. Against this backdrop, in the fall of 2007 and continuing until sometime after May 20, 2008, Romo accessed Cheng's Yahoo! account from her home in Mansfield, Massachusetts no more than five times.

17. John and Laura Romo both ceased to be employees of Advanced in 2008.

18. Laura Romo filed an action in Rhode Island Superior Court in November, 2008 alleging, among other things, that when she attempted to ascertain the reasons for decreased revenues to Advanced "Klufas failed to provide her with answers, explanation, or other pertinent information."

19. Advanced has adopted an Employee Policy and Procedurals Manual ("Manual"). The Manual was issued in 2003 and has not been modified since.

20. The Manual applies to all the employees at Advanced, including the radiologists, a fact confirmed in sworn and binding Rule 30(b)(6) testimony by Advanced.

21. Cheng testified at his deposition that he has knowledge of the Manual and that it has been in place for "five, six years at least."

22. The Manual prohibits all forms of sexual harassment, including but not limited to "sexual advances, verbal or physical conduct of a sexual nature, visual forms of a sexual or offensive nature (e.g., signs and posters, materials downloaded from the Internet, sexually explicit e-mail communications), or requests for sexual favors."

23. The Manual provides that Advanced's computing resources are not to be used for "personal and non-business related purposes."

24. The Manual states the following concerning web-based email activities:

Internet usage is subject to monitoring at any time. All of an employee's online communications and internet visits made during business hours are not considered to be private. Therefore the employee should treat all of their activities as such. The company reserves the right to inspect files and any communications that an employee makes in order to ensure compliance with this policy.

25. During John Romo's tenure as Administrator, a secretary at Advanced lodged a complaint that she had been the subject of inappropriate behavior by a physician. The victim wrote a letter reporting the incident, John Romo reviewed the situation, but Klufas did not assign anyone to monitor or respond to the situation.

26. Romo reasonably and necessarily was responsible for reviewing the conduct of Cheng in sending and receiving sexually explicit email to/from Cunningham.

27.     On or about October 27, 2010, John Romo produced these emails in connection with a lawsuit that he commenced in 2009 in the Rhode Island Superior Court against Advanced and Klufas.

28.     Cheng admitted in sworn deposition testimony that he has suffered no monetary harm caused by Romo's conduct.  He has not sought any treatment, counseling or medical attention whatsoever due to this issue.

29.     When asked about the basis or methodology to support his damages Cheng stated that he felt $50,000 was an appropriate figure "given the amount of, you know, time and effort I've had to devote to it, given, you know, the – my salary level as a whole."

30.     In fact, Cheng's salary has not been reduced and he has not received any demotion or negative consequence to his employment at Advanced on account of this event.

31.     Advanced paying upfront Cheng's legal fees and expenses incurred in prosecuting this case.

## IV.    ISSUES OF LAW

### A.    Agreed Upon Statements of The Issues of Law

1.      Whether Romo engaged in an "unreasonable, substantial or serious interference with [Cheng's] privacy" in violation of the Massachusetts Privacy Act, M.G.L. c. 214, § 1B, by accessing Cheng's Yahoo! e-mail account.

### B.    Plaintiff's Statement of Additional Issues of Law

1.      Whether Romo is liable to Cheng for violating the Stored Communications Act ("SCA"), 18 U.S.C. § 2701(a), by intentionally accessing Cheng's Yahoo! e-mail account without authorization or in excess of her authorization to do so.  *See* 18 U.S.C. § 2701(a) (civil liability available when one "intentionally accesses without authorization a facility through

which an electronic communication service is provided . . . [or] intentionally exceeds an authorization to access that facility . . . and thereby obtains, alters, or prevents authorized access to a wire or electronic communication while it is in electronic storage in such system").

2. Whether Romo should be sanctioned for spoliation of evidence for destroying the computer from which she accessed Cheng's Yahoo! e-mail account after she consulted an attorney in 2007 regarding her dispute with Advanced. *See, e.g., McGuire v. Acufex Microsurgical, Inc.*, 175 F.R.D. 149, 154 (D. Mass. 1997) (sanctionable spoliation of evidence occurs when a party intentionally destroys discoverable evidence that it had a duty to preserve because of an ongoing or anticipated litigation).

  **C.**  **Defendant's Statement of Additional Issues of Law**

1. Whether Romo is liable to Cheng for violating the Stored Communications Act ("SCA"), 18 U.S.C. § 2701(a), § 2707(a), which makes liable one who intentionally accesses without authorization a facility through which an electronic communication service is provided or intentionally exceeds an authorization to access that facility with a knowing or intentional state of mind, by accessing Cheng's Yahoo! e-mail account. *See* 18 U.S.C. § 2701(a), § 2707(a).

**V.**  **EXPECTED LENGTH OF TRIAL**

The parties expect the trial of this matter to last two to three full days.

**VI.**  **TRIAL WITNESSES**

The Parties reserve the right to supplement this list as necessary up to and including the time of trial and to call additional unlisted witnesses as are necessary to respond to or rebut testimony by listed witnesses including to impeach the credibility of listed witnesses.

David Cheng, 7 Howland Farm Road, East Greenwich, Rhode Island

Laura Romo, 7 Old Stable Drive, Mansfield, Massachusetts

Roman Klufas, 50 Galen Court, Seekonk, Massachusetts

John D. Romo, 7 Old Stable Drive, Mansfield, Massachusetts

John V. Romo, 7 Old Stable Drive, Mansfield, Massachusetts

Katherine Lagor, address unknown

Krishanu Gupta, 10 Signal Ridge Way, East Greenwich, Rhode Island

Patricia Cunningham, 10 Kings Row, Cumberland, Rhode Island

Janet Thomas, 30 Harriet Thayer Ave.; Attleboro, Massachusetts

Lauren Cheng, 7 Howland Farm Road, East Greenwich, Rhode Island

Michael Patrick Cunningham, 10 Kings Row, Cumberland, Rhode Island

**VII.     PROPOSED EXHIBITS**

The Parties reserve the right to supplement this list as necessary up to and including the time of trial and to offer such additional unlisted exhibits as are necessary to respond to or rebut testimony by witnesses including to impeach the credibility of listed witnesses. The Parties further reserve the right to object to the admissibility at trial of any of the proposed exhibits listed herein. Counsel for the Parties will exchange exhibits lists prior to trial and prepare a binder of joint and proposed exhibits for the Court.

1. Advanced Radiology Inc. Employee Policy and Procedures Manual (AR 000001-40)
2. September 12, 2007 probation letter to John D. Romo (LR013-14)
3. March 10, 2006 e-mail from Cunningham to Cheng (JDR 000021)
4. June 26, 2007 e-mail chain between Cunningham and Cheng (JDR 000019-20)
5. June 26, 2007 e-mail from Cunningham to Cheng (JDR 000012)
6. August 13, 2007 e-mail chain between Cunningham and Cheng (JDR 000013-14)
7. August 27, 2007 e-mail chain between Cunningham and Cheng (LR 005)

8. September 8, 2007 e-mail chain between Cunningham and Cheng (JDR 000001-2)

9. September 9, 2007 e-mail from Cunningham to Cheng (JDR 000005)

10. September 10, 2007 e-mail chain between Gupta, Cheng and Klufas (JDR 000023)

11. March 20, 2008 e-mail chain between Cunningham and Cheng (JDR 000010-11)

12. Notice of Intention to Take Deposition of Advanced Radiology, Inc., served on October 20, 2011

13. Portions of the deposition transcript of Katherine Lagor, as the Fed. R. Civ. P. 30(b)(6) designee of Advanced Radiology, Inc., taken on November 18, 2011

14. September 12, 2007 letter from Roman Klufas, M.D. to John Romo, M.D.

15. Complaint (together with Exhibits 1-4 thereto) in the matter *Romo v. Roman A. Klufas, M.D. and Advanced Radiology, Inc.,* C.A. No. 08-7204 (R.I. Super. Ct.)

16. Series of emails sent from and/or received by the Yahoo! account of David Cheng, M.D. ("dccheng02818@yahoo.com"), produced as non-consecutive Bates-labeled pages JDR000001-000021 in the matter *Romo v. Advanced Radiology, Inc. and Roman A. Klufas, M.D.*, C.A. No. 09-0129 (R.I. Super. Ct.)

17. Rhode Island District Court, Sixth Division's June 9, 2009 Decision and Judgment in the matter *Advanced Radiology, Inc. v. Dept. of Employment and Training, Board of Rev.*, A.A. No. 00037 (June 9, 2009 R.I. Dist. Ct.)

18. Documents produced in *Romo v. Roman A. Klufas, M.D. and Advanced Radiology, Inc.,* C.A. No. 08-7204 (R.I. Super. Ct.)

19. Documents produced in *Romo v. Advanced Radiology, Inc. and Roman A. Klufas, M.D.*, C.A. No. 09-0129 (R.I. Super. Ct.)

20. Emails to/from David Cheng, M.D. (March, 2006; Aug., 2007; Sept., 2007; March, 2008; May, 2008) (LR001-009)

21. May, 2007 emails to/from Laura Romo, M.D. re: Rebecca Loper incident (LR010-012)

22. Correspondence re: Advanced Radiology, Inc. technologist staffing (LR094-104)

## VIII.  PROPOSED TRIAL DEADLINES

(a)  Proposed Trial Date – March 25, 2013

(b)  Proposed deadline for motions in limine – Motions filed on or before March 11, 2013; Oppositions filed on or before March 18, 2013

(c)  Proposed deadline for proposed jury instructions - March 22, 2013

(d)  Proposed deadline for proposed jury voir dire – March 22, 2013


| LAURA ROMO, M.D., | DAVID CHENG, M.D., |
|---|---|
| By her attorney, | By his attorney, |
| ____/s/ Joseph V. Cavanagh, III____ | ____/s/ Zachary W. Berk____ |
| Karen A. Pelczarski (BBO #547667) | Peter S. Brooks (BBO #058980) |
| kap@blishcavlaw.com | pbrooks@saul.com |
| Joseph V. Cavanagh, III (BBO #657671) | Zachary W. Berk (BBO #663575) |
| jvc3@blishcavlaw.com | zberk@saul.com |
| BLISH & CAVANAGH LLP | SAUL EWING LLP |
| Commerce Center | 131 Dartmouth Street, Suite 501 |
| 30 Exchange Terrace | Boston, MA  02116 |
| Providence, RI  02903-1765 | Tel:  (617) 723-3300 |
| Tel:  (401) 831-8900 | Fax:  (617) 723-4151 |

DATED:  December 28, 2012

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on December 28, 2012.

　　　　　　　　　　　　　　　　　　  ____/s/ Zachary W. Berk____
　　　　　　　　　　　　　　　　　　　　Zachary W. Berk