# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DAVID CHENG, M.D., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No.:  1:11-cv-10007 |
| ) | |
| LAURA ROMO, M.D., ) | |
| ) | |
| Defendant. ) | |

## DEFENDANT'S MOTION IN LIMINE TO PRECLUDE EVIDENCE OF ALLEGED ACTUAL DAMAGES

For the reasons set forth below, Defendant Laura Romo, M.D. moves for an Order precluding the presentation of evidence of Plaintiff David Cheng, M.D.'s alleged actual damages.

## FACTS[1]

Among other things, Cheng prays for compensatory damages.  In his Rule 26 initial disclosures, Cheng made only the following conclusory statement concerning actual damages he suffered: "Cheng states that he is entitled to damages caused by the embarrassment he suffered with his wife and his business partners as a result of Defendant's unauthorized access and distribution of his personal, private emails." (Document 11 at 3).  In discovery, Cheng again answered vaguely and in conclusory fashion the following interrogatory seeking information about his damages:

> Interrogatory No. 16.  Identify and describe as completely as possible the physical, emotion, financial or any other type of harm suffered by Plaintiff as a result of the

---

[1] The facts set forth herein relate to the instant Motion.  For a full recitation of the background facts, please refer to those set forth in Defendant's Memorandum in Support of Motion for Summary Judgment (Document 20-1).

conduct of Defendant as alleged in the Complaint, including a detailed calculation of the damages claimed by Plaintiff attributable to such harm.

Plaintiff's answer, as it relates to alleged actual damages, states:

> Answer to Interrogatory No. 16.  . . . Plaintiff states that as a result of Defendant's illegal conduct, he has suffered significant emotional harm due to Defendant's invasion of privacy.  Plaintiff states that his email account includes not only work-related communications, but also communications from friends, partners, and his wife.  Although only a few emails were produced, it is likely that a much larger number for emails were read by the Defendant during her search.  The Plaintiff states that he has suffered stress related to this unreasonable invasion of his privacy, particularly in light of the fact that Defendant was once a business partner and friend. In addition, the Plaintiff states that he has been harmed by the false accusation of having had an extramarital affair, which has placed stress on his marriage."

A copy of the pertinent portion of Plaintiff's Answers to Defendant's First Set of Interrogatories is attached hereto as Exhibit A.

Plaintiff was asked in Rule 34 requests for production to provide "Any and all documents that support Plaintiff's claim for damages in this action."  *See* Defendant's First Request for Production of Documents by Plaintiff, Request No. 5.  Plaintiff's responded "that he will produce all non-privileged documents responsive to this request."  Yet the actual documents produced – which Plaintiff's counsel segregated by request number – included no documents responsive to Request No. 5.  A copy of the pertinent portion of Plaintiff's Responses to Defendant's First Request for Production of Documents is attached hereto as Exhibit B.

At his deposition, Cheng claimed he was seeking $50,000 in damages but could offer no support or explanation of that figure beyond a vague, incoherent reference to the amount of time he has devoted to this suit.  The entirety of his testimony on damages is set forth below:

> Q.  And you have a claim for monetary damages in this case; is that correct?
> A.  Yes.
> Q.  And what exactly are you claiming that you are entitled to monetary compensation for?
> A.  You mean the exact number?

Q.  Well --

A.  Or what --

Q.  I'll ask you that, a number at some point, but I'm just asking what are you -- what's the harm that you have suffered and that you're seeking compensation for?

A.  Well, my privacy has been violated.  I've had an accusation against me of improper conduct based upon that violation.  I've had information disseminated about me that puts into question my ability to manage or puts into question whether or not I have my company's best interests at heart.  All of those things are harmful to my ability to do my job.

Q.  Have there been any monetary consequences that you have suffered because of that?

A.  No, other than -- no.

Q.  Now, there was a reference in some of the discovery materials about stress that this has caused you, emotional stress.  Have you sought any treatment or counseling as a result of this issue?

A.  No.

Q.  Have you sought any medical attention whatsoever due to stress or emotional fallout because of this issue?

A.  No.

***

Q.  Talking about the damages, what is the approximate amount of damage that you're looking for or compensation you're looking for?

A.  I think it was $50,000 or something.

Q.  And is there any methodology or attribution that you can point to that results in a $50,000 figure?

A.  I think -- no, other than that, I think it's an appropriate number given the amount of, you know, time and effort I've had to devote to it, given, you know, the -- my salary level as a whole.  I think it's reasonable.

Q.  Okay.  Is that a figure you came up with on your own?

A.  No.  It was after discussion with legal staff.

Q.  You mentioned that it's a reflection of your salary and what you have had to deal with as a result of this incident.  Has your salary been decreased as a result of this incident?

A.  No.

Q.  Have you received any type of demotion or demerit or any negative consequence vis-a-vis Advanced Radiology and your employment as a result of this?

A.  No.

Cheng Depo., p. 73, l. 16 – p. 76, l. 25 (a copy of this cited portion is attached hereto as Exhibit

C).

At her deposition, Cheng's wife corroborated the absence of stress suffered by her

husband due to Romo's access of his  review of his emails, and instead cited the fact of the

existence of litigation as the source of stress:

3

Q    Now, are you aware your husband has made a claim for damages in this case, that is, monetary compensation as a result of the access of these e-mails?
A    I don't know.  I didn't know.  I don't know.
Q    You mentioned that this incident has caused you stress?
A    Not this incident.  Just having a looming lawsuit causes a general stress to anyone.
Q    Okay.  But the existence of these e-mails and the access of these e-mails, does that in particular cause you stress?
A    No.
Q    Do you know whether it causes your husband stress?
A    I don't think the e-mails, in and of themselves, cause him stress.
Q    Have the two of you sought counseling at all as a result of these e-mails or anything else going on in your marriage?
A    No.
Q    To the best of your knowledge, has your husband or you individually sought counseling as a result of this lawsuit, these e-mails, or anything else going on in your lives?
A    No.

Deposition of Lauren Cheng, November 16, 2011, p. 40, l. 5 – p. 41, l. 3.  A copy of the cited

portion of this transcript is attached hereto as Exhibit D.

## ARGUMENT

## I.  Procedural Rules Governing Pretrial Discovery Require Preclusion.

"A party who has made a disclosure under Rule 26(a)—or who has responded to an

interrogatory, request for production, or request for admission—must supplement or correct its

disclosure or response: (A) in a timely manner if the party learns that in some material respect

the disclosure or response is incomplete or incorrect, and if the additional or corrective

information has not otherwise been made known to the other parties during the discovery process

or in writing . . . ."  Fed. R. Civ. P. 26(e).

Rule 26(a)(1)(A)(iii) provides that "a party must, without awaiting  a discovery request,

provide to other parties . . . a  computation of each category of damages claimed by the

disclosing party." *See Design Strategy, Inc. v. Davis*, 469 F.3d 284, 295 (2nd Cir. 2006) ("Rule

26(a) requires a party to provide a computation of any category of damages voluntarily, i.e.,

'without awaiting a discovery request'"); *Morrison Knudsen Corporation v. Fireman's Fund Insurance Co.*, 175 F.3d 1221, 1229 (10th Cir. 1999) (a "party must automatically disclose 'a computation of any category of damages claimed' and must produce for inspection all materials on which it bases its computation"); *Clayman v. Starwood Hotels & Resorts Worldwide*, 343 F.Supp.2d 1037, 1047 (D.Kan. 2004) (under Rule 26(a)(1), a party must "disclose its computation of damages without waiting for a discovery request"). "[B]ased on the information then reasonably available to it," a party must make the initial disclosures irrespective of whether "another party has not made its disclosures." Rule 26(a)(1)(E).

"If a party fails to provide information . . . required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c). Further, "In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard: (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure; (B) may inform the jury of the party's failure; and (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)–(vi)." *Id.*

A court order issued under Rule 37(a) need not first be violated before the court may impose the sanctions provided under part (c). What the district court must find under Rule 37(c) is that the offending parties were not "substantially justified" in failing to disclose information required by Rule 26(a) or Rule 26(e) and that the failure to disclose was not harmless. This is a "self-executing sanction for failure to make a disclosure required by Rule 26(a), without need for a motion under subdivision [37](a)(2)(A)." Fed. R. Civ. P. 37, advisory committee notes." *Ortiz-Lopez v. Sociedad Espanola de Auxilio Mutuo y Benefiencia de Puerto Rico, Etc.*, 248 F.3d 29, 33 (1st Cir. 2001). "A substantial justification is one that 'could satisfy a reasonable person.'"

*Pan American Grain Mfg. Co., Inc. v. Puerto Rico Ports Authority*, 295 F.3d 108, 117 (1st Cir.

2002) (interpreting prior, similar version of Rule 37); *see also AVX Corp. v. Cabot Corp.*, 251

F.R.D. 70 (D. Mass., 2008) (striking insufficient damages disclosures under Rules 26 and 37(e)).

The broad range of sanctions available under Rule 37(c) allows a court "to best match the

degree of non-compliance with the purpose of Rule 26's mandatory disclosure requirements."

*Ortiz-Lopez*, 248 F.3d at 34. Pertinent factors to consider in assessing the appropriate sanction

include "the history of the litigation, the proponent's need for the challenged evidence, the

justification (if any) for the late disclosure, and the opponent's ability to overcome its adverse

effects." *Macaulay v. Anas*, 321 F.3d 45, 51 (1st Cir. 2003) (setting out these factors as a means

to review the sanction imposed by the lower court). "Surprise and prejudice" are also "important

integers" in the calculation. *Id.*  In examining the range of sanctions, the court carefully balances

"fairness to the parties with the need to manage crowded dockets." *Id.*

At the upcoming trial, Cheng seeks an award of actual damages allegedly suffered on

account of Romo's reviewing his emails.  Upon information and belief, Cheng will attempt to

testify or otherwise proffer evidence that he should be awarded actual damages because of

emotional or psychological harm.  Yet, he has to-date provided no information whatsoever

detailing any actual harm he suffered, offering only a vague and arbitrary assessment that he

feels he is entitled to $50,000.  The Complaint seeks compensatory and punitive damages and

attorneys' fees.  Plaintiff has made no disclosure or other provision of information concerning

what portion of his claimed damages relates to emotional harm versus statutory damages.  While

Cheng can claim some cover as to the unknown amount of statutory damages under the SCA

(which authorizes damages not less than $1,000), whatever psychological harm he purportedly

suffered would have been known and ascertainable to Cheng long ago given that he learned of

Romo's access of his email account no later than the fall of 2010 – over thirty months ago.  In any event, any details he intends to present at trial not included in his answer to Interrogatory No. 16 should have been disclosed well before now, two weeks before trial.

Romo would suffer significant "surprise and prejudice" if, against the backdrop of Cheng's scant pretrial disclosures and concessionary deposition testimony, he is allowed to change his tune and make a detailed, strident presentation of actual damages at trial.  He has been given four separate opportunities pretrial to put even some "meat on the bone" of his bare, conclusory claim for actual damages and has declined every one.  In fact, he expressly disavowed any manifestations of his stress at his deposition and his wife later corroborated the same at hers.  Against this background Plaintiff should be precluded from showing up at trial and introducing testimony which necessarily will be inconsistent with his pretrial treatment of this issue.

## II.  Substantive SCA and Privacy Law Requires Preclusion.

Much more fundamental than protecting against procedural prejudice or surprise, Plaintiff's scant pretrial disclosures concerning damages, when set against the substantive law governing recovery of damages under the SCA and the Massachusetts Privacy Act command that any evidence of "actual" damages be precluded at trial.

As a threshold matter in looking at the SCA claim, while the Supreme Court has not yet addressed the question directly, the weight of authority is that non-pecuniary damages of the sort claimed by Plaintiff are not recoverable under the SCA.  18 U.S.C. § 2707 permits recovery of "the sum of the actual damages suffered by the plaintiff and any profits made by the violator as a result of the violation."  In 2012, the Supreme Court determined that the civil remedy provision of the federal Privacy Act, codified in part at 5 U.S.C. § 552a, which features language virtually

identical to the SCA language quoted above, does not permit recovery of non-pecuniary damages. *F.A.A. v. Cooper*, 132 S.Ct. 1441, 1446 (2012). The Court noted that the federal Privacy Act "serves interests similar to those protected by defamation and privacy torts" and, therefore, reasoned that if Congress had intended to allow recovery thereunder for non-monetary harm, it would have used a different term than "actual damages." *Id.* at 1450-52. Further, the court recognized the overlap between the remedial purposes of the federal Privacy Act and those of common law torts of defamation and privacy and expressly linked federal statutory treatment of damages under these and other such "dignitary" torts. *Id.* Accordingly, it highlighted Comment *d* (1939) to the Restatement of Torts §867, which notes that damages for interference with privacy "can be awarded in the same way in which general damages are given for defamation". *Id.* Consistent with the Supreme Court's reasoning in this regard, comment b to Restatement § 623 makes clear that proof of an "actual injury" is a prerequisite for a damages award for emotional distress.

Closer to home, the First Circuit has described the purpose of the SCA as follows: "While drafting the [SCA], Congress also recognized that, with the rise of remote computing operations and large databanks of stored electronic communications, threats to individual privacy extended well beyond the bounds of the Wiretap Act's prohibition against the 'interception' of communications." *United States v. Councilman*, 418 F.3d 67, 80 (1st Cir. 2005). Thus, the First Circuit identified the SCA as protecting the same "dignitary" interests as those addressed by the Supreme Court in *F.A.A. v. Cooper* (e.g., defamation, privacy) under the federal Privacy Act. Consistent with the Supreme Court's holding, non-pecuniary damages are similarly not recoverable under the SCA. Decisions of other federal district courts addressing this precise issue are in accord. *See, e.g., Brahmana v. Lembo*, No. C-09-00106-RMW, 2010 U.S. Dist.

LEXIS 24784, *22 (March 17, 2010, N.D. Cal.) (striking plaintiff's claim for emotional distress damages under SCA because recovery limited to "actual damages").

Nevertheless, assuming, *arguendo*, Cheng is eligible as a matter law of able to recover damages for emotional distress under the SCA or Massachusetts Privacy Act, the paucity of information on the pretrial record demonstrating actual harm on makes appropriate the preclusion of any evidence proffered at trial to show actual damages.

Common law courts have traditionally been reticent regarding compensatory damages for emotional distress in the absence of physical injury. *See* W. Page Keeton et al., *Prosser & Keeton on The Law of Torts* Ch. 2, § 12, at 64 (5th ed. 1984). This reticence originated from "the elementary principle that mere mental pain and anxiety are too vague for legal redress," *Southern Express Co. v. Byers*, 240 U.S. 612, 615, 60 L. Ed. 825, 36 S. Ct. 410 (1916) (internal quotation marks omitted). Not only is emotional distress fraught with vagueness and speculation, it is easily susceptible to fictitious and trivial claims, *see Consolidated Rail Corp. v. Gottshall*, 114 S. Ct. 2396, 2408 (1994). This concern was well articulated in a 1982 Supreme Judicial Court opinion considering emotional distress damages in the context of a negligent infliction claim:

> If such a plaintiff's testimony is believed, and there is no requirement of objective corroboration of the emotional distress alleged, a defendant would be held liable unjustifiably. It is in recognition of the tricks that the human mind can play upon itself, as much as of the deception that people are capable of perpetrating upon one another, that we continue to rely upon traditional indicia of harm to provide objective evidence that a plaintiff actually has suffered emotional distress.

*Payton v. Abbott Labs*, 386 Mass. 540, 547, 437 N.E.2d 171, 175 (1982).

As to invasion of privacy specifically, M.G.L. c. 214, 1B is considered generally analogous to the common law category of invasion privacy law proscribing public disclosure of

private facts. *Bratt v. International Business Machines Corp.,* 392 Mass. 508, 519, n.15, 467

N.E.2d 126 (1984).  Thus, Cheng will be required to at least make a showing of the sort called

for by Restatement § 652H, comment b that his damages are "of a kind that normally results

from such an invasion and it is normal and reasonable in its extent."  Significantly, Cheng has

disclosed no bases or potential witnesses through which he might even attempt to make this

showing.  Again, when expressly requested to describe "as completely as possible" (see

Interrogatory No. 16) his alleged emotional harm, Cheng could manage no more than a series of

vague and conclusory statements patently insufficient to support any such showing.

Undoubtedly, he intends to offer significantly more detail at trial but to allow as much on this

record would prejudice Romo's defense of his claims.

        In addition, Cheng should not be permitted to hide behind the principle, stated in, among

other cases, *Merrill v. Waffle House, Inc.*, 227 F.R.D. 467 (N. D. Tex., 2005), that psychological

damages are necessarily vague and not amendable to calculation.  *Id.* at 470.  First, the court in

*Merrill* considered a motion to compel discovery concerning alleged emotional distress damages,

not a pretrial motion to preclude evidence.  *Id.*  Second, the court there registered concern with

the defendant's demand for a specific computation of damages, which it characterized as

necessarily vague, however it clearly recognized the critical need for the defending party to

obtain and review the documents and information underlying the claim and thus allowed

discovery of the plaintiff's medical records.  *Id.* at 474.  In the instant case, Romo does not

complain of merely the absence of a mathematical computation of damages, but rather, given

that the absence of anything other than vague statements in support of Cheng's claim coupled

with his testimony expressly disclaiming any manifestation of emotional harm, Defendant would

necessarily be prejudiced by the sudden introduction of such information at trial.  Furthermore,

to the extent *Merrill* and related cases provide cover for a claimant who has declined to identify an amount of damages sought, Cheng lies outside of that veil insofar as he did in fact, albeit without any support, claim a figure of $50,000 at his deposition.  Moreover, it should not go unnoticed that the emotional distress claimant in *Merrill* indeed had manifested emotional harm and sought medical treatment, placing Merrill on entirely different footing than the instant case.

Finally, even if Plaintiff is permitted to present evidence and pursue his claim for damages under Count II (the Massachusetts Privacy Act claim), he should be precluded from pursuing actual damages under Count I (the SCA claim) for the reasons stated above.  The absence of "actual damages" under the SCA triggers consequences.  Specifically, "the plain language of [18 U.S.C.] § 2707(c) unambiguously requires proof of actual damages as a prerequisite to recovery of statutory damages."  *Van Alstyne v. Elec. Scriptorium, Ltd.*, 560 F.3d 199, 206 (4th Cir. 2009).  Thus, the preclusion of Cheng's claim for actual damages under the SCA necessarily warrants preclusion of his alleged statutory damages under the SCA.  *Id.*; *see also, Cornerstone Consultants, Inc. v. Prod. Input Solutions, LLC*, et al., 789 F. Supp. 2d 1029, 1055 (N.D. Iowa, 2011).

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court issue an Order precluding the admission of evidence of Cheng's alleged actual damages at the upcoming trial and, for purpose of Count I, statutory damages under the SCA.

LAURA ROMO, M.D.,

By her attorneys,


/s/ Joseph V. Cavanagh, III
Karen A. Pelczarski  (BBO No. 547667)
Joseph V. Cavanagh, III (BBO No. 657671)
BLISH & CAVANAGH LLP
Commerce Center
30 Exchange Terrace
Providence, RI  02903-1765
Telephone:  (401) 831-8900
kap@blishcavlaw.com
jvc3@blishcavlaw.com


## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on April 5, 2013.

/s/ Joseph V. Cavanagh, III