UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| DAVID CHENG, M.D., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No.: 1:11-cv-10007 |
| ) | |
| LAURA ROMO, M.D., ) | |
| ) | |
| Defendant. ) | |

## DEFENDANT'S MOTION IN LIMINE REGARDING SPOLIATION

For the reasons set forth below, Defendant Laura Romo, M.D. moves for an Order precluding the reference to, or an inference instruction concerning, Defendant's alleged spoliation of evidence in discarding the computer used to access Plaintiff David Cheng's email account.

## FACTS[1]

In his Memorandum in Opposition to Defendant's Motion for Summary Judgment Cheng argues that Romo committed spoliation of evidence in discarding her son's computer. In the Joint Pretrial Memorandum, Cheng indicates he will seek spoliation sanctions based on the disposal of the computer.

At Romo's deposition, Cheng's counsel inquired about the computer she used to access Cheng's email account. She testified that it was her son's computer, that it crashed at some point after August, 2008, and that it was thereafter discarded in the ordinary course. Laura Romo, M.D. Depo., Oct. 25, 2011, pp. 78, l. 6 – p. 82, l. 2. Her husband, John D. Romo, M.D., and

---

[1] The facts set forth herein relate to the instant Motion. For a full recitation of the background facts, please refer to those set forth in Defendant's Memorandum in Support of Motion for Summary Judgment (Document 20-1).

their son, John V. Romo, were also deposed on this same point and confirmed the same account, with John V. Romo confirming that it was in 2008 that the computer crashed. John D. Romo, M.D. Depo., Nov. 15, 2011, pp. 22, l. 18 – p. 23, l. 16; John V. Romo Depo., Nov. 15, 2011, p. 12, ll. 5-9, p. 17, ll. 17-24. The cited portions of these deposition transcripts are attached hereto as Exhibits A through C, respectively.

## ARGUMENT

Before a negative inference based on spoliation of evidence may be drawn, certain foundational requirements must be met. *Testa v. Wal-Mart Stores, Inc.*, 144 F.3d 173, 177 (1st Cir. 1998). "The sponsor of an inference of spoliation must proffer evidence sufficient to permit the trier to find that the target knew of (a) the claim (that is, the litigation or the potential for litigation), and (b) the document's potential relevance to that claim." *Id.* However, "even if these foundational requirements have been met, the trier nonetheless may refuse to draw the negative inference. In other words, 'the inference is permissive, not mandatory.'" *Id.*

"And there is an even more rudimentary requirement: the party urging that spoliation has occurred must show that there is evidence that has been spoiled (i.e., destroyed or not preserved)." *Gomez v. Stop & Shop Supermarket Co.*, 670 F.3d 395, 399 (1st Cir. 2012). "The evidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a fact-finder must resolve." *Id.*

In *Gomez*, plaintiff suffered injuries as a result of a slip and fall in the greeting card aisle one of the defendant's supermarkets. Plaintiff alleged that since the defendant had installed a surveillance system and was in constant control of its operation, the defendant must have a videotape of the incident, failed to produce the videotape at trial or during discovery and, thus,

must have concealed and/or destroyed the evidence. *Id.* at 399.  Critical to the court's rejection of a spoliation inference was the absence of any evidence on the record that the surveillance records in question actually contained evidence probative of the underlying issues in the case.  The court explained:

> A cashier employed by the defendant testified that there are cameras in the store that cover "a good majority" of the selling floor. Although this testimony supports a conclusion that the store had cameras focused on some areas of the market, it does not support a conclusion (or even a reasonable inference) that a security camera filmed the incident that transpired in the greeting card aisle. The absence of any such evidence is fatal to the plaintiff's hypothesis. *See Mack v. Great Atl. & Pac. Tea Co.*, 871 F.2d 179, 181 (1st Cir. 1989) ("The evidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve.").

Applying these principles, and *Gomez* decision, to the instant case compels the preclusion of any inference or reference that Romo intentionally destroyed evidence harmful to her defense.  First, the deposition testimony from the three parties who have any knowledge of the topic – Romo, her husband and her son – confirms that it both crashed and was discarded prior to the filing of the instant suit.  Second, there has been no testimony whatsoever suggesting Romo was aware of the federal or statutory claims pressed by Plaintiff much less that she knew litigation would ensue or had any inkling that (without conceding as much) her son's computer might contain relevant information concerning those claims.  In fact, Romo's consistent position has been that she believed herself authorized to access Cheng's email, which directly counters any notion that she "knew" the instant litigation might ensue.

Third, and most fundamentally, plaintiff has not disclosed any witnesses or documents that could speak to the technical issue of whether or not the discarded computer would even contain probative evidence of Romo's internet activity.  The recovery of "internet history" files from computer hard drives is a topic on which courts routinely look to expert testimony.  *See,*

*e.g., United States v. Kain*, 589 F.3d 945, 949 (8th Cir. 2009) (expert testimony offered to establish internet history to show web sites with pornographic pictures had been visited through defendant's computer); *United States v. Romm*, 455 F.3d 990, 995-96 (9th Cir. 2006) (three separate experts offered to establish reliability of forensic analysis of internet history from defendant's hard drive).  Thus, in order to satisfy the prerequisites for a spoliation inference under *Gomez*, Plaintiff would need to introduce expert testimony showing that the subject computer contained evidence potentially spoiled.  Upon information and belief, the browsing software commonly used with Microsoft "Windows" and Apple "Macintosh" operating systems automatically deletes internet activity within a matter of twenty to thirty days.  Thereafter, only through specialized efforts to recover "cache" files or other embedded data might an expert technician in some instances salvage reliable data about the user's internet activities.  Plaintiff has made no attempt to make such showing on the record and the time for designating an expert to opine on the topic has long passed.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests an Order precluding the reference to, or an inference instruction concerning, Defendant's alleged spoliation of evidence in discarding the computer used to access Plaintiff David Cheng's email account.

LAURA ROMO, M.D.,

By her attorneys,

/s/ Joseph V. Cavanagh, III
Karen A. Pelczarski  (BBO No. 547667)
Joseph V. Cavanagh, III (BBO No. 657671)
BLISH & CAVANAGH LLP
Commerce Center
30 Exchange Terrace
Providence, RI  02903-1765
Telephone:  (401) 831-8900
kap@blishcavlaw.com
jvc3@blishcavlaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on April 5, 2013.

/s/ Joseph V. Cavanagh, III