**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

|  |  |  |
|---|---|---|
| | ) | |
| DAVID CHENG, M.D., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.:  1:11-cv-10007 |
| | ) | |
| LAURA ROMO, M.D., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION IN LIMINE TO**
**PRECLUDE EVIDENCE OF ALLEGED ACTUAL DAMAGES**

Plaintiff David Cheng, M.D. ("Cheng" or "Plaintiff"), hereby by opposes defendant

Laura Romo, M.D.'s ("Romo" or "Defendant") Motion in Limine to Preclude Evidence of

Alleged Actual Damages (the "Motion"). Romo's request that the Court preclude evidence of

actual damages is baseless and not supported by any relevant case law. The issue of whether

Cheng has set forth sufficient evidence of his actual damages, which include damages for mental

anguish and emotional suffering, is a matter for the jury, not Romo, to decide. Several court have

found it appropriate to award plaintiffs with damages for emotional harm under facts similar to

those at issue here. In addition, there is no support for Romo's claim that nonpecuniary actual

damages are not recoverable under either the Stored Communications Act or the Massachusetts

Privacy Act. Accordingly, Romo's Motion should be denied.

**ARGUMENT**

A.    **Cheng Complied With His Discovery Obligations And**
      **Adequately Disclosed Evidence Of His Actual Damages.**

There is absolutely no basis for Romo's claim that Cheng has been concealing evidence

of actual damages and intends to "change his tune" at trial. Cheng described the mental anguish

and emotional harm he suffered as a result of Romo's invasion of his privacy in his interrogatory answers and answered questions regarding the same at his deposition. The determination of whether Cheng's testimony is credible and if the evidence is sufficient to support an award of actual damages is a matter for the jury to decide.

Damages for emotional distress are "esoteric" by nature and difficult to quantify. *Koster v. Trans World Airlines, Inc.*, 181 F.3d 24, 36 (1st Cir. 1999); *Soto-Lebron v. Fed. Express Corp.*, 538 F.3d 45, 68 (1st Cir. 2008). "'[T]ranslating legal damage into money damages ─ especially in cases which involve few significant items of measurable economic loss ─ is a matter peculiarly within a jury's ken.'" *Trainor v. HEI Hospitality, Inc.*, 699 F.3d 19, 32 (1st Cir. 2012) (quoting *Sanchez v. P.R. Oil Co.*, 37 F.3d 712, 723 (1st Cir. 1994)). The First Circuit has repeatedly held that damages for mental anguish or emotional distress are recoverable in the absence of expert testimony and based solely on lay testimony, even if that testimony is, to some extent, self-serving. *See Sanchez*, 37 F.3d at 724; *Trainor*, 37 F.3d at 32; *Koster*, 181 F.3d at 35; *Rodriguez-Torres v. Caribbean Forms Mfg., Inc.*, 399 F.3d 52, 63 (1st Cir. 2005). The First Circuit has upheld actual damage awards in several cases where, as here, the nature of the plaintiffs' mental and emotion harm was difficult to quantify and the there was no evidence that the plaintiffs sought medical treatment or had long-term physical symptoms. *See McDonough v. City of Quincy*, 452 F.3d 8, 22 (1st Cir. 2006); *Rodriguez-Torres*, 399 F.3d at 64; *Koster*, 181 F.3d at 35-36. In *McDonough*, the Court upheld a substantial damages award where the plaintiff testified the defendant's conduct caused him humiliation, damaged his reputation, and caused his relationship with his family to suffer. 452 F.3d at 22. In *Rodriguez-Torres*, the Court upheld an emotional distress damages award based on the plaintiff's testimony that the defendant's conduct caused her marriage to suffer and caused her to enter a "deep depression

which lasted 'for quite some time.'" 399 F.3d at 64. In *Koster*, the Court found that damages for emotional distress were proper where the plaintiff testified that, as a result of the defendant's conduct, he had trouble sleeping, was anxious, had a vacation that "did not go well," took antacid pills of a regular basis, and his family life suffered. 181 F.3d at 36. *See also Trainor*, 699 F.3d at 32 (emotional distress damages awarded in the absence of evidence of "medical treatment, counseling, or other similar attention" where plaintiff testified defendant's conduct changed him as a person, caused him stress, and put a strain on his marriage); *Soto-Lebron*, 538 F.3d at 65 (evidence of shame, humiliation and harm to plaintiff's reputation sufficient to merit award of actual damages). The cases cited by Romo for the proposition that "[c]ommon law courts have traditionally been reticent regarding compensatory damages for emotional distress in the absence of physical injury" are inapplicable here as they concern tort claims where emotional distress is an element of the underlying claim. *See Payton v. Abbott Labs*, 386 Mass. 540, 544 (1982) (addressing whether a physical manifestation of harm is an element of a tort claim for negligent infliction of emotional distress); *Consolidated Rail Corp. v. Gottshall*, 114 S.Ct. 2396, 2406 (1994) (discussing common law claim for negligent infliction of emotional distress); *Southern Express Co. v. Byers*, 36 S.Ct. 410, 411 (1916) (plaintiff asserted a "claim for mental suffering only").

During discovery, Cheng produced evidence that Romo's unauthorized intrusion into his personal e-mail caused him actual damages. Among other things, Cheng stated that he suffered from stress resulting from his knowledge that his trusted business partner and friend, Romo, invaded his privacy and had access to his e-mail account that included personal communications from friends, business partners, and family, including his wife. (*See* Docket Entry ("DE") No. 40-1 at Answer to Interrogatory No. 16.) He also explained that Romo's printing and sharing of

his personal e-mails, and subsequent false allegations of an extramarital affair, placed stress on his marriage. (*Id.*) Cheng further testified that he was humiliated at work by the disclosure of his personal e-mail, it harmed his reputation in the office, and harmed his ability to perform his job. (DE 40-1 at Cheng Dep. p.74.)

As in *McDonough*, *Rodriguez-Torres*, *Koster*, and the other cases cited above, Cheng's allegations are sufficient to support an award of actual damages. The fact that Cheng did not seek medical attention or counseling does not preclude him from recovering damages for the mental anguish and emotional harm he has suffered due to Romo's invasion of his privacy. Simply because Romo does not believe Cheng's allegations are sufficient to support an actual damages award does not mean the issue should be taken away from the jury. *See Sanchez*, 37 F.3d at 723 ("translating legal damage into money damages—especially in cases which involve few significant items of measurable economic loss—is a matter peculiarly within a jury's ken"). Notably, Romo fails to cite a single case where a party was precluded from eliciting evidence of emotional damages at trial because of a perceived inadequate amount of evidence was produced in discovery.

Should Cheng's testimony at trial regarding his emotional damages deviate from or expand upon what he disclosed in discovery—whether it be because his memory has changed, he articulates himself differently, or he is posed new questions—Romo will have the opportunity to question and impeach Cheng to discredit his testimony (as is the case in any trial). Ultimately, it is for the jury to assess Cheng's credibility and weigh the evidence presented at trial, including Cheng's wife's testimony, to determine whether Cheng is entitled to any actual damages.[1] That

---

[1] Romo's suggestion that Cheng's wife's testimony somehow confirms that Cheng has not suffered any actual damages is misleading. Ms. Cheng testified that she did not think the e-mails printed by Romo from Cheng's e-mail account "in and of themselves" caused Cheng stress. That testimony, however, does not indicate that Cheng has not been mentally and emotionally harmed by Romo's invasion of Cheng's privacy.

decision should not be taken away from the jury where Cheng has alleged and set forth evidence

of actual damages just because Romo does not believe Cheng's evidence is sufficient.

Romo also suggests Cheng should not be able to seek actual damages at trial because he

allegedly did not provide a proper computation of those damages under Fed. R. Civ. P. 26.

Courts addressing the issue of whether a specific computation of compensatory damages for

emotional distress must be disclosed prior to trial have found that it is not necessary. In *Merrill v.*

*Waffle House, Inc.*, 227 F.R.D. 467 (N.D.Tex. 2005), the court explained that "'compensatory

damages for emotional distress are necessarily vague and generally considered a fact issue for

the jury' and 'may not be amenable to the kind of calculation disclosure contemplated by [Rule

26].'" *Id.* at 470 (quoting *Williams v. Trader Publishing Co.*, 218 F.3d 481, 486 (5th Cir. 2000)).

Where a plaintiff does not intend to ask the jury for a specific dollar amount at trial, it is not

necessary to disclose a computation of damages for emotional distress. *Id.*; *see also De Varona v.*

*Discount Auto Parts, LLC*, No. 12-20714-Civ., 2012 WL 2334704, at * 2 (S.D.Fla. June 19,

2012) (various courts have "held that calculations are not required where the plaintiff does not

intend to ask the jury for a specific dollar amount") (citing cases). Although it does not appear

that any courts in the First Circuit have addressed this issue, the cases cited above square with

the First Circuit's view that damages for emotional distress are "esoteric," difficult to quantify,

and within the "ken" of the jury. *See Koster*, 181 F.3d at 36; *Soto-Lebron*, 538 F.3d at 68.

Therefore, Cheng does not have an obligation to set forth a specific dollar amount of his

emotional damages prior to trial. Nevertheless, Cheng did set forth a specific dollar amount for

his emotional damages during his deposition, $50,000, which is sufficient to satisfy any

obligation he may have to provide a computation of his actual damages.

**B.      Actual Damages In The Form Of Mental Anguish
Or Emotional Harm Are Permitted Under The Stored
Communication Act And The Massachusetts Privacy Act.**

Romo relies on the Supreme Court's decision in *Fed. Aviation Admin. v. Cooper*, 132

S.Ct. 1441 (2012), to argue that Cheng is precluded from recovering damages for non-monetary

harm under the Stored Communications Act ("SCA"), 18 U.S.C. § 2701, *et seq.* That case is not

applicable for several reasons. First, the *Cooper* decision concerns the recovery of actual

damages under the Privacy Act of 1974, 5 U.S.C. § 552a, not the SCA. 132 S.Ct. at 1446.

Despite Romo's claim that the *Cooper* decision is instructive because of similarities between the

language of the Privacy Act and the SCA, several courts, including the Supreme Court, have

rejected that notion. In *Doe v. Chao*, 124 S.Ct. 1204, 1212 (2004), the petitioner argued that the

Supreme Court should consider the legislative history of the SCA in interpreting the Privacy Act

because of similarities in their language. The Court rejected that comparison stating that "the

trouble with [the petitioner's] position is its reliance on the legislative histories of completely

separate statutes passed well after the Privacy Act." *Id.* The Court further explained that "[t]hose

of us who look to legislative history have been wary about expecting to find reliable interpretive

help outside the record of the statute being construed[.]" *Id.* Aside from the Fourth Circuit's

decision in *Van Alstyne v. Elec. Scriptorium, Ltd.*,  560 F.3d 199, 204-06 (4th Cir. 2009), which

Romo cites, virtually every court since *Doe* that has addressed whether the Privacy Act and SCA

should be interpreted harmoniously has declined to apply the *Doe* court's interpretation of the

Privacy Act to the SCA because "the Privacy Act and the SCA are different statutes, with

different purposes, and they penalize different behavior." *Pure Power Boot Camp, Inc. v.*

*Warrior Fitness Boot Camp, LLC*, 759 F.Supp.2d 417, 427 (S.D.N.Y. 2010) (citing *Freedman v.*

*Town of Fairfield,* No. 3:03CV01048 (PCD), 2006 WL 2684347, at *3 (D.Conn. Sept. 19, 2006)

("*Doe* is dubious authority for the proposition that Section 2707(c) does not mean what it provides, recovery of 'minimum statutory damages of $1,000.'"); *In re Hawaiian Airlines, Inc.,* 355 B.R. 225, 230 (D.Haw. 2006) ("Notwithstanding the similar language found in the two statutes, the overall structure of the [SCA] and its legislative history differ from the Privacy Act such that the holding in [*Doe*] is not directly applicable to the [SCA]"); *Cedar Hill Assocs., Inc. v. Paget,* No. 04 C 0557, 2005 WL 3430562, at *3 (N.D.Ill. Dec. 9, 2005) (citing to the legislative history of the SCA in determining that *Doe* is inapplicable to the SCA)).[2]

The *Cooper* decision is also inapplicable to the interpretation of the SCA because its holding was primarily based on the "sovereign immunity canon" that "any ambiguities in the statutory language are to be construed in favor of immunity . . . so that the Government's consent to be sued is never enlarged beyond what a fair reading of the text requires." 132 S.Ct. at 1448, 1455 (citing *U.S. v. Williams*, 115 S.Ct. 1611 (1995); *Ruckelshaus v. Sierra Club*, 103 S.Ct. 3274 (1983)). The Privacy Act provides for a civil remedy against Executive Branch agencies in the event an agency breaches confidentiality requirements. *Id.* at 1446. The SCA, on the other hand, does not implicate sovereign immunity principles because it does not create a civil remedy exclusively against the government. Thus, even if there were reason to look to cases interpreting the Privacy Act for guidance (which there is not), the reasoning of the *Cooper* decision is inapplicable to the interpretation of the meaning of actual damages under the SCA.

Lastly, the *Cooper* decision's analysis of the Privacy Act is distinguishable because the legislative history specific to that statute, which included a "Privacy Protection Study Commission" that was established to consider whether the government should be liable for general damages, indicated that actual damages under the Privacy Act were meant to be

---

[2] All of these cases reject the proposition asserted by Romo that actual damages are required for an award of statutory damages under the SCA.

construed as special damages, *i.e.*, damages for economic harm. *Id.* at 1452-53. The SCA has an entirely different legislative history than the Privacy Act and Romo fails to demonstrate how Congress intended to limit actual damages under the SCA to damages for economic harm.[3]

Accordingly, actual damages under the SCA should be interpreted in conformity with the "generic meaning" of the term, which includes damages for nonpecuniary loss. *Id.* at 1453 (citing *Birdsall v. Coolidge*, 93 U.S. 64 (1876) ("[c]ompensatory damages and actual damages mean the same thing; that is, that the damages shall be the result of the injury alleged and proved, and that the amount awarded shall be precisely commensurate with the injury suffered"); *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 350 (1974) (actual injury in the defamation context "is not limited to out-of-pocket loss" and customarily includes "impairment of reputation and standing in the community, personal humiliation, and mental anguish and suffering")); *see also Steele v. Title Realty Co.*, 478 F.2d 380, 384 (10th Cir. 1973) (finding that actual damages under the Fair Housing Act "are not limited to out-of-pocket losses but may include an award for emotional distress and humiliation"); *Thompson v. San Antonio Retail Merchants Assn.*, 682 F.2d 509, 513-14 (5 th Cir. 1982) (per curium) (stating that actual damages under the Fair Credit Reporting Act include damages for "humiliation and mental distress" even without "out-of-pocket expenses").

With regard to the Massachusetts Privacy Act, M.G.L. c. 214, § 1B, Cheng is similarly entitled to seek damages for emotional harm and mental anguish. Romo does not cite any case law to the contrary. Although its does not appear that Massachusetts courts have directly addressed this issue, courts frequently hold that damages for mental suffering are recoverable in invasion of privacy cases. *See* Restatement (Second) of Torts § 652H (1977); 32 Am. Jur. Trials

---

[3] The *Brahmana v. Lembo*, No. C-09-00106 RMW, 2010 WL 965296 (N.D.Cal. Mar. 17, 2010), case cited by Romo is not instructive. There, the court dismissed the plaintiff's damages claim under the SCA without explanation. *Id.* at *8.

105, § 7 (2004); *Trevino v. Southwestern Bell Tel. Co.*, 582 S.W.2d 582, 584 (Tex.Civ.App. 1979) (finding that damages for mental suffering are recoverable without the necessity of showing actual physical injury in an action for willful invasion of privacy); *Fairfax Hosp. v. Curtis*, 492 S.E.2d 642, 647 (Va. 1997) (approving of damages for humiliation, embarrassment, and similar harm to feelings, where unaccompanied by physical harm and cause of action existed independent of such harm).

## CONCLUSION

For the foregoing reasons, Romo's Motion should be denied.

DAVID CHENG, M.D.,

By his attorney,

/s/ Zachary W. Berk
Peter S. Brooks (BBO #058980)
pbrooks@saul.com
Zachary W. Berk (BBO #663575)
zberk@saul.com
SAUL EWING LLP
131 Dartmouth Street, Suite 501
Boston, MA  02116
Tel:  (617) 723-3300
DATED: April 12, 2013                    Fax:  (617) 723-4151

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non registered participants on April 12, 2013.

/s/ Zachary W. Berk
Zachary W. Berk