UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DAVID CHENG, M.D., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No.: 1:11-cv-10007 |
| | ) |
| LAURA ROMO, M.D., | ) |
| | ) |
| Defendant. | ) |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION IN LIMINE REGARDING SPOLIATION**

Misstating both the factual record and the applicable law, Defendant Laura Romo ("Romo") seeks to bar Plaintiff David Cheng ("Cheng") from introducing evidence that Romo destroyed the computer she used to intercept Cheng's personal e-mail on the eve of the filing of lawsuits by her and her husband against Cheng's company. Romo fails to understand that it is a pure question for the jury whether this act should lead to an inference that the computer contained information adverse to her case. It is certainly inappropriate for this court to rule in advance of this trial that such relevant evidence should be excluded, and the court should defer any action on this issue until the issue is presented in the context of all of the evidence during the trial.

### I.    Statement of the Facts Relevant to the Issue of the Destruction of Evidence

The facts bearing on Romo's secret interception of Cheng's personal e-mails are well-known to this court. In September of 2007 Romo's husband John Romo, an employee of the company (Advanced Radiology) in which both Romo and Cheng were an owner and employee, was placed on probation for repeated instances of abusive treatment of female employees. Romo hired a lawyer shortly thereafter. Then, after hiring counsel, and perhaps at the direction

of counsel, she went into Cheng's personal e-mail account, having been given his password years earlier to review a medical report, printed certain personal e-mails, and regularly logged on to his account thereafter until at least May of 2008. Romo accessed these e-mails from her son's computer, although she had others available to her, because she felt "very uncomfortable" logging into Cheng's account. Romo also secretly recorded partners' meetings and her meetings with other employees. Right before she and her husband filed separate suits against Advanced Radiology and Cheng's partner in Rhode Island, Romo destroyed her son's computer that she used to get into Cheng's account. As a result, Cheng has been deprived of the ability to show the number of occasions that Romo accessed his e-mail account or the e-mails that were downloaded or printed.

Cheng will introduce this evidence at trial. The destruction of the computer needs to be explained to the jury because Cheng will seek to have the jury infer that Romo accessed his e-mail account far more often than she admits to, and the jury may well wonder why the computer was not examined to determine that issue with precision. The destruction of the computer also reflects a consciousness of guilt by Romo, coupled with her use of her son's computer because she felt "very uncomfortable" using her own, that controverts her newly-created justification that there was some legitimate business reasons for her illegal behavior.

## II. It is for the Jury to Decide if Romo's Destruction of the Computer Warrants an Adverse Inference.

Romo asks this court to accept her testimony that she destroyed her son's computer because it crashed and was discarded in the ordinary course without knowledge that the computer might contain relevant evidence. She claims she did not know the wrongfulness of violating state and federal law by accessing Cheng's personal e-mail account (although she does not dispute she had counsel at the time) and she felt she was authorized to look into his account

(thus asking this court to disregard her testimony that she used her son's computer because she felt very uncomfortable using her own). Unable to maintain a story without contradiction, she asserts from one side of her mouth that she had a legitimate reason to look at the e-mails to learn about business disputes at the time, but then says in the same breath that she had no idea that the e-mails she read might be relevant in the litigation she was about to begin. If they were not relevant then why did she read them, copy them and give them to her husband?  There are simply too many factual issues to permit this court to rule as a matter of law that evidence of the destruction of the computer should be kept from the jury.

Romo correctly acknowledges that *Gomez v. Stop & Shop Supermarket Co.*, 670 F.3d 395 (1st Cir. 2012), requires that a party alleged to have spoliated evidence have notice of a potential claim and of the potential relevance of the destroyed evidence to support an adverse inference that the destroyed evidence was harmful to the spoliator.  But then Romo misstates the evidence in an effort to fit her circumstances into *Gomez*.  She claims the computer crashed and was discarded before this suit was filed, but she conveniently fails to tell the court that the computer was destroyed right before she and her husband filed suit in Rhode Island. *Gomez* says a party must have knowledge of a potential claim and of the potential relevance of the destroyed evidence. There is nothing in *Gomez* that says a spoliator must know the specific law and case that will be raised in litigation.  Romo destroyed the computer after she and her husband had hired counsel and right before lawsuits were filed.  John Romo's lawsuit squarely alleges his probation for his treatment of Trish Cunningham and claims that the reasons for his probation were fabricated.  The Cheng-Cunningham e-mails might be relevant to his allegations in that suit.  And Laura sued in part for the treatment of her husband by Cheng and the company.  At the very least Romo knew that litigation was imminent and that the Cheng-Cunningham relationship

was one of the issues she and her husband were raising in their suits.  *Gomez* requires nothing more to support a spoliation claim.

Romo also continues to maintain that she felt she was authorized to access Cheng's e-mail and thus could not have anticipated this lawsuit.  Apparently Romo believes this court may adjudicate her state of mind on a motion *in limine* and may remove this issue from the jury. *Gomez* says nothing of the sort and *Gomez* is clear that it is a question for a jury whether potentially relevant evidence was destroyed and whether an adverse inference should be drawn from the destruction of that evidence.  Moreover, Romo's self-serving statement of her state of mind at the time is belied by her testimony that she used her son's computer- rather than her own- because she felt "very uncomfortable" accessing Cheng's e-mail.  The evidence certainly warrants a finding that she knew what she did was wrong and destroyed the computer before litigation started to hide the evidence of her conduct.

In *Gomez,* the party alleging spoliation was unable to even show that there was any evidence that was destroyed.  The inability to show that any evidence was destroyed is why a spoliation argument was not accepted in *Gomez*.  Here, it is undisputed that there was evidence- the computer- that was destroyed right before litigation was started. There is no conjecture involved in finding that there was relevant evidence destroyed.

Nor is Cheng required, as Romo states, to produce expert testimony about what information could have been learned from the computer.  Romo destroyed the computer, so how could an expert opine about the information that would have been available?  We do not know- and thanks to Romo will never know- the condition of the hard drive or what information could have been recovered from the hard drive.  It is nonsense to argue that a party claiming spoliation must prove what the destroyed evidence would have shown.  The whole point of a spoliation

instruction is that a party destroyed potentially relevant evidence and deprived the other party of the ability to show that evidence. An adverse inference may be drawn by a jury if evidence is **potentially** relevant and is destroyed.  *Testa v. Wal-Mart Stores, Inc.*, 144 F.3d 173 (1st Cir. 1998).  No expert is necessary for a jury to conclude that the computer was potentially relevant.

## CONCLUSION

For the foregoing reasons, Romo's motion to preclude the introduction of evidence that she destroyed the computer from which she accessed Cheng's e-mail should be denied.

DAVID CHENG, M.D.,

By his attorney,

          /s/ Zachary W. Berk
Peter S. Brooks (BBO #058980)
pbrooks@saul.com
Zachary W. Berk (BBO #663575)
zberk@saul.com
SAUL EWING LLP
131 Dartmouth Street, Suite 501
Boston, MA  02116
Tel:  (617) 723-3300
Fax:  (617) 723-4151

DATED: April 12, 2013

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non registered participants on April 12, 2013.

   /s/ Zachary W. Berk
Zachary W. Berk