## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

_____

|  |  |  |
|---|---|---|
| DAVID CHENG, M.D., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.:  1:11-cv-10007 |
| | ) | |
| LAURA ROMO, M.D., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

_____

### PLAINTIFF'S OPPOSITION TO DEFENDANT'S
### MOTION FOR JUDGMENT AS A MATTER OF LAW

Defendant Laura Romo, M.D.'s ("Romo" or "Defendant") Motion for Judgment as a
Matter of Law (the "Motion") requests that the Court  adopt an illogical interpretation of the
Stored Communications Act, 18 U.S.C. § 2701 *et seq.* (the "SCA"), that does not comport with
the relevant case law, the plain language of the statute, or the legislative intent in adopting the
statute. The vast majority of courts addressing the issue of whether e-mail maintained by a web-
based service provider—such as Yahoo!—falls within the scope of the SCA have found that such
e-mail accounts are covered by the SCA. Furthermore, common sense militates against reading a
meaningless distinction into the SCA that would protect web-based e-mail from unauthorized
access only if the unopened e-mails are accessed or the e-mail account holder downloads, copies
or saves the subject e-mails in another location. Accordingly, Romo's Motion should be denied.

### ARGUMENT

**A.     The Case Law Overwhelmingly Supports An Interpretation Of The
        SCA That Covers Dr. Cheng's Yahoo! E-mail At Issue In This Case.**

The majority of cases addressing the argument set forth by Romo in the Motion,
including the *Theofel* case cited by Romo, have rejected the premise that previously opened e-

mail maintained in an e-mail account is not in "electronic storage" for purposes of the SCA. *See Theofel v. Farey-Jones*, 359 F.3d 1066, 1075 (9th Cir. 2004) (e-mail messages stored on an electronic communication service's server are stored for "purposes of backup protection" within the ordinary meaning of those terms); *Shefts v. Petrakis*, No. 10-cv-1104, 2011 WL 5930469, at *6 (C.D.Ill. Nov. 29, 2011) ("a plain reading of the statute requires the conclusion that when communications are stored on an email provider's server they are protected from unauthorized access under the SCA"); *Pure Power Boot Camp v. Warrior Fitness Boot Camp*, 587 F.Supp.2d 548, 557 (S.D.N.Y. 2008) (the SCA properly applies in situations where e-mail is viewed by a third-party after it has been delivered and viewed by an e-mail account holder); *Cardinal Health 414, Inc. v. Adams*, 582 F.Supp.2d 967, 976 n.2 (M.D.Tenn. 2008) (agreeing with *Theofel* that "an e-mail is in 'electronic storage' when it is waiting to be read and afterwards, and, therefore, intentionally reading an unauthorized e-mail, opened or not, is a violation of the [SCA]"); *Bailey v. Bailey*, No. 07-11672, 2008 WL 324156, at *6 (E.D.Mich. Feb. 6, 2008) ("the plain language of the statute seems to include emails received by the intended recipient where they remain stored by an electronic communication service"); *see also Quon v. Arch Wireless Operating Co., Inc.*, 529 F.3d 892, 902-03 (9th Cir. 2008) (explaining its holding in *Theofel* that "e-mail messages-which were stored on the [electronic communication service's] server after delivery to the recipient-were 'stored for purposes of backup protection' . . . within the ordinary meaning of those terms" and apply that reasoning to defendant's text messaging service); *Fraser v. Nationwide Mut. Ins. Co.*, 352 F.3d 107, 114 (3d Cir. 2004) (expressing doubt that previously opened/received e-mails are "not in backup storage-a term that neither the statute nor the legislative history defines").

In *Theofel v. Farey-Jones*, 359 F.3d 1066, 1075 (9th Cir. 2004), the Court addressed the

defendant's argument that "[e-mail] messages remaining on an ISP's server after delivery no longer fall within the [SCA's] coverage." The defendant in *Theofel* argued, as Romo does here, that such e-mails are not "stored 'for purposes of backup protection'" in accordance with the definition of "electronic storage" under 18 U.S.C. § 2510(17)(B), which is incorporated into the SCA through 18 U.S.C. § 2711(1), and therefore they do not fall within the scope of the SCA. The court, however, determined "that, within the ordinary meaning of those terms, [such e-mails] are [being stored for backup protection]." *Id.* at 1075. The court further explained "an obvious purpose for storing a message on an ISP's server after delivery is to provide a second copy of the message in the event that the user needs to download it again—if, for example, the message is accidentally erased from the user's own computer. The ISP copy of the message functions as a 'backup' for the user."[1] *Id.*

The Court in *Bailey* reached a similar conclusion. There, the defendant argued that the SCA did not apply to allegations that he accessed with ex-wife's yahoo e-mail account without authorization "because the emails and messages he accessed were already opened by Plaintiff." 2008 WL 324156, at *5. After considering the same arguments Romo sets forth here, the Court determined that "[t]he fact that Plaintiff may have already read the emails and messages copied by Defendant does not take them out of the purview of the Stored Communications Act." *Id.* at *6. The Court reasoned that "[t]he plain language of the statute seems to include emails received

---

[1] The *Theofel* opinion contains confusing dicta that may be read to contradict the court's holding and support Romo's position, but that language has been discounted by subsequent decisions. Specifically, the court noted that "[a]n ISP that kept permanent copies of temporary messages could not fairly be described as 'backing up' those messages." *Id.* at 1070. The Court, however, went on to give the following example of when a stored message would not be maintained for a backup purpose: "messages a user had flagged for deletion from the server." *Id.* at 1076. Moreover, in *Quon*, the Ninth Circuit explained that "*Theoful's* holding-that e-mail messages stored on NetGate's server after delivery were for 'backup protection,' and that NetGate was undisputedly an ECS-forecloses [defendant's] position. " 529 F.3d at 902-03.

by the intended recipient where they remain stored by an electronic communication service."[2] *Id.*

As found in *Theofel*, *Bailey*, and other cases mentioned above, the plain language of the statute leads to the conclusion that e-mail in post-transmission storage falls within the scope of the SCA. This conclusion is consistent with the manner in which people use e-mail in today's society and rests on a reasonable interpretation of the meaning of "backup protection" as used in the statute. E-mails are accessed from an electronic service provider's server when a user logs into his or her e-mail account over the internet. The user reads his or her e-mail and, if the user decides to save an e-mail, he or she does not delete it and leaves the already opened e-mail message in the e-mail account to store it. In other words, upon viewing an e-mail, the user makes a determination whether to delete that e-mail or leave a "backup" copy of that message in the account for later access. Because the SCA clearly applies to post-transmission e-mail maintained on electronic communication service's server (there is no dispute that Yahoo! is an electronic communication service), the parties' testimony regarding whether Romo read unopened e-mails in Cheng's Yahoo! account or whether Cheng saved e-mails he received in his Yahoo! account in a separate location, is irrelevant. It is undisputed that Romo accessed e-mail stored in Cheng's Yahoo! e-mail account and, therefore, the jury's finding that Romo violated the SCA by doing so without authority or in excess of her authority was appropriate.

In arguing that the e-mail in Cheng's Yahoo! e-mail account falls outside of the scope of the SCA, Romo relies on outlier cases and distinctions between the definition of an "electronic communication service" ("ECS") and a "remote computing service" ("RCS") that are not at issue with respect to Cheng's claim. Cheng alleged that Romo violated § 2701(a) of the SCA. That

---

[2] The Court also declined to read § 2510(17)(A) and § 2510(17)(B) as setting forth a singular definition of "electronic storage" because if that were intended "there would be no need to write them as two separate meanings." *Id.* at *6; *see also Theofel*, 359 F.3d at 1076 (finding that subsection (B) of § 2510(17) would be drained of independent content if it were read in conjunction with subsection (A)).

section does not mention RCS providers. It does cover ECS providers and Yahoo! clearly falls within the definition of an ECS, which § 2510(15) states "means any service which provides to users thereof the ability to send or receive wire or electronic communications." Because Yahoo! is an ECS and § 2701(a) does not address RCS providers, any distinctions made between ECS and RCS providers in §§ 2702 and 2703, which concern voluntary disclosure of communications by service providers and disclosures requested by the government, respectively, are irrelevant.

The district court's decision in *U.S. v. Weaver*, 636 F.Supp.2d 769 (C.D.Ill. 2009), upon which Romo relies and which conflicts with the majority of decisions cited above, concerns an analysis of whether a Hotmail account is maintained by an ECS or RCS for purposes of a § 2703 in connection with a government subpoena. *Id.* at 771. The *Weaver* decision distinguished *Theofel* based on the Ninth Circuit's unstated "assumption that users download emails from an ISP's server to their own computers" and is premised on the court's unique interpretation of "storage for backup protection" such that it should be limited to e-mail that is saved in multiple locations. *Id.* at 772-73. The *Weaver* court's interpretation of "backup protection" is inconsistent with the purposes of the SCA (which are discussed in detail below), does not square with the ordinary meaning of the term in the context of e-mail usage, and was reached in connection with an analysis of portions of the SCA that are not applicable here (*i.e.*, § 2703). In fact, a number of courts that have analyzed § 2702 of the SCA in connection with civil subpoenas issued to ECS providers, including Yahoo! and Google, have held that e-mails stored by those entities are covered by the SCA without exception. *See Bower v. Bower*, 808 F.Supp.2d 348, 350 (D.Mass. 2011) ("courts have repeatedly held that providers such as Yahoo! and Google may not produce emails in response to civil discovery subpoenas"); *In re Subpoena Duces Tecum to AOL, LLC*, 550 F.Supp.2d 606, 611-12 (E.D.Va. 2008) (the "clear and unambiguous language" of the SCA

covers personal e-mails being stored electronically by AOL). The other cases cited by Romo should be rejected for reasons similar to the *Weaver* case. *See Flagg v. City of Detroit*, 252 F.R.D. 346, 362-64 (E.D.Mich. 2008) (finding that a text messaging service provider that was no longer being used by the defendant was an RCS for purposes of § 2702 and that archived text messages received years before by the defendant were not being stored for backup protection); *Crispin v. Christian Audigier, Inc.*, 717 F.Supp.2d 965, 987 (C.D.Cal. 2010) (following *Weaver* in finding that social networking sites are RCS providers for purposes § 2702 once messages have been opened by users).

**B.    The Legislative History of The SCA Shows That Dr. Cheng's Yahoo! E-mail Was Protected by The Statute.**

Even assuming *arguendo* that the definition of "electronic storage" in the SCA is somehow ambiguous on the question of  previously opened e-mails stored in web-based e-mail accounts (which it is not), the legislative history of the statute confirms that Congress intended the SCA to protect such e-mails from unauthorized access.

"Where the literal reading of a statutory term would 'compel an odd result,' . . . we must search for other evidence of congressional intent to lend the term its proper scope." *Public Citizen v. U.S. Dept. of Justice*, 491 U.S. 440, 454 (1989) (quoting *Green v. Bock Laundry Machine Co.*, 490 U.S. 504, 509 (1989)). "Looking beyond the naked text for guidance is perfectly proper when the result it apparently decrees is difficult to fathom or where it seems inconsistent with Congress' intention, since the plain meaning rule is 'rather an axiom of experience than a rule of law, and does not preclude consideration of persuasive evidence if it exists.'" *Id.* at 455 (quoting *Boston Sand & Gravel Co. v. U.S.*, 278 U.S. 41, 48 (1928)). "'[S]tatutes always have some purpose or object to accomplish, whose sympathetic and imaginative discovery is the surest guide to their meaning.'" *Id.* (quoting *Cabell v. Markham*,

148 F.2d 737, 739 (2d Cir.), *aff'd*, 326 U.S. 404 (1945)).

The First Circuit engaged in an in depth discussion of the SCA's legislative history in

*U.S. v. Councilman*, 418 F.3d 67 (1st Cir. 2005). Regarding the origin of the SCA, the Court

observed:

> While drafting the [Electronic Communications Privacy Act's]
> amendments to the Wiretap Act, Congress also recognized that, with the rise of
> remote computing operations and large databanks of stored electronic
> communications, threats to individual privacy extended well beyond the bounds
> of the Wiretap Act's prohibition against the 'interception' of communications.
> These types of stored communications—including stored e-mail messages—were
> not protected by the Wiretap Act. Therefore, Congress concluded that 'the
> information [in these communications] may be open to possible wrongful use and
> public disclosure by law enforcement authorities as well as unauthorized private
> parties.' S.Rep. No. 99–541, at 3 (1986), *reprinted in* 1986 U.S.C.C.A.N. 3555,
> 3557.
>
> Congress added Title II to the ECPA [i.e., the Stored Communications
> Act] to halt these potential intrusions on individual privacy.

*Id.* at 80-81. (Emphasis added.)

The First Circuit further recognized that Congress's definition of "electronic storage" in

18 U.S.C. § 2510(17) is both "expansive" and "broad." *Id.* at 73, 76 (citing *U.S. v. Councilman*,

245 F.Supp.2d 319, 320 (D.Mass. 2003) (describing the definition of "electronic storage" as

"extraordinarily—indeed, almost breathtakingly—broad")). Prior to the ECPA adopting a broad

definition of electronic storage, "e-mail messages retained on the service provider's computers

after transmission . . . could be accessed and possibly disclosed by the provider." *Id.* at 77. The

Court explained "the purpose of the broad definition of electronic storage was to enlarge privacy

protections for stored data under the Wiretap Act, not to exclude e-mail messages stored during

transmission from those strong protections." *Id.* at 76. Additionally, "Congress sought to ensure

that the messages and by-product files that are left behind after transmission, as well as messages

stored in a user's mailbox, are protected from unauthorized access." *Id.* at 77.[3]

In light of the legislative history of the SCA and the intended meaning of "electronic storage," it is clear Congress intended to protect private e-mail messages, such as the e-mails in Cheng's Yahoo! e-mail account, from unauthorized access by third-parties regardless of whether those e-mails were previously opened by the account holder or stored in a location other than the electronic communication service's server. In *Councilman*, the First Circuit recounted how the SCA was specifically created "to halt [the] potential intrusions on individual privacy" related to stored electronic communications, including stored e-mail messages. Similarly, the Court in *Councilman* recognized how Congress intended a broad definition of "electronic storage" such that stored e-mail messages retained by a service provider would be covered by the statute. These interests would be subverted by the adoption of the interpretations of the SCA and the term "electronic storage" advocated by Romo, which limits the reach of the SCA to unopened e-mail messages and e-mail that is saved in two locations. That interpretation would not reach the vast majority of e-mail messages that exist in today's society, *i.e.*, previously opened e-mail messages stored in a web-based e-mail account, and would run counter to the statute's purpose of providing protection from intrusions on individual privacy.

**C.      Romo's Proposed Construction Of The SCA Is Illogical.**

Neither Romo nor any of the decisions she relies on in her Motion explain or attempt to explain the rationale behind an interpretation of the SCA that covers only unopened e-mail or e-

---

[3] The legislative history also shows Congress was concerned about the amount information that is now "subject to control … of third party computer operator[s]" and as a result is "open to possible wrongful use and public disclosure by law enforcement authorities as well as unauthorized private parties." S. Rep. No. 99-541, at 3 (1986). Congress observed that "if persons with records have a choice of maintaining them 'in house' or with a third party, they may be less inclined to go outside if such a move deprives them of legal rights." H.R. Rep. No. 99-647, at 26 (1986). Accordingly, Congress enacted the legislation with the "recognition that what is being protected is the sanctity and privacy of the communication." 132 Cong. Rec. H4039-01 (June 23, 1986) (statement of Rep. Kastenmeir).

mail that has been downloaded, copied or saved separately from an electronic communication

service. There is no logical reason why those categories of e-mail should be afforded greater

privacy and be distinguished from e-mails that have been opened and stored only on the server of

a web-based service provider. Such a distinction furthers no meaningful purpose, is illogical, is

contrary to Congress's intent in enacting the SCA, and is based on nothing more than a twisted

interpretation of the SCA. Regardless, as was recognized in *Theofel*, *Shefts*, and *Bailey*, the plain

meaning of the language of the SCA is that the statute applies to protect the privacy of all e-mail

messages, open or unopened, that are stored with ECS providers.

### CONCLUSION

For the foregoing reasons, Romo's Motion should be denied.


DAVID CHENG, M.D.,

By his attorney,

_____*/s/ Zachary W. Berk*_____
Peter S. Brooks (BBO #058980)
pbrooks@saul.com
Zachary W. Berk (BBO #663575)
zberk@saul.com
SAUL EWING LLP
131 Dartmouth Street, Suite 501
Boston, MA  02116
Tel:  (617) 723-3300
DATED: May 10, 2013                Fax:  (617) 723-4151


### CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent
electronically to the registered participants as identified on the Notice of Electronic Filing and
paper copies will be sent to those indicated as non registered participants on May 10, 2013.

  */s/ Zachary W. Berk*_____
Zachary W. Berk