UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| DAVID CHENG, M.D., Plaintiff, | ) | |
| v. | ) | Civil Action No.: 1:11-cv-10007 |
| LAURA ROMO, M.D., Defendant. | ) | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF HIS MOTION FOR ATTORNEYS' FEES AND COSTS**

Plaintiff David Cheng, M.D. ("Plaintiff" or "Cheng") submits this memorandum in support of his motion for attorneys' fees and costs incurred in connection with the prosecution of his claim under the Stored Communications Act ("SCA"), 18 U.S.C. § 2701 *et seq.* As a result of the jury's verdict in Plaintiff's favor on the SCA claim, Cheng is entitled to an award of his reasonable attorneys' fees and costs from defendant Laura Romo, M.D. ("Defendant" or "Romo") under § 2707(b)(3). Cheng requests that the Court award $244,688.53 of attorneys' fees and costs he has incurred in connection with this case and that the Court enter an Order directing Romo to pay that amount plus interest, or any other amount the Court deems appropriate, to Cheng.

## RELEVANT BACKGROUND

### A. Procedural History

This case arose following Cheng's discovery during the course of legal proceedings in Rhode Island, which were instituted by Romo and her husband, John Romo ("John"), that Romo had accessed and printed e-mails from Cheng's personal e-mail account without authorization. (*See* Affidavit of Peter S. Brooks (the "Brooks Aff."), submitted herewith, at ¶3.) Thereafter,

counsel conducted legal research as to Cheng's rights, Cheng decided to pursue legal action, and counsel drafted and filed the Complaint in this case asserting violations of the SCA and Massachusetts Privacy Act. (*Id.*) Counsel then attended pre-trial conferences, prepared and responded to written discovery, conducted or attended 8 depositions, served and responded to document subpoenas, prepared a motion to quash subpoenas, and reviewed documents produced in response to document requests and subpoenas. (*Id.*) When discovery was completed, Cheng's counsel responded to Romo's motion for summary judgment, which was accompanied by a twenty-five (25) page memorandum, with a twenty-five (25) page brief, an affidavit citing to testimony from seven (7) depositions, and Plaintiff's Concise Statement of Disputed Facts disputing thirty-one (31) facts asserted in Romo's moving papers. (*Id.*; *see also* Docket Entry ("DE") Nos. 21, 26-28.) Subsequently, counsel prepared for and attended oral argument on that motion. (Brooks Aff., ¶3.) Before trial, counsel prepared and responded to motions in limine, prepared voir dire and jury instructions, and completed on-going legal research into a variety of issues that arose during the case. (*Id.*) Finally, counsel for the Plaintiff prepared for and conducted a five-day jury trial, and responded to Defendant's post-trial motion for judgment as a matter of law. (*Id.*; DEs 71, 79.)

Following the five-day trial, on April 26, 2013, the jury found Romo liable to Cheng for violations of the SCA and Massachusetts Privacy Act and awarded Cheng $200,000 of actual damages and $125,000 of punitive damages. (DE 77.)

**B.     Attorneys' Fees And Costs Incurred By Cheng**

A total of 573.9 hours was billed by Cheng's counsel in connection with this case since the issues first arose in late 2010 until the end of April 2013. (Brooks Aff., ¶4, Ex. B.) Of that time, 386.3 hours or 67.3% of the total time billed was associate time and 184.3 hours or 32.1%

of the total time billed was partner time. (*Id.*) Prior to the time devoted to trial preparation in 2013 (most, if not all, of the 2013 attorney time is related to trial preparation), only 22% of the time billed in this case was partner related time of Attorney Brooks. (*Id.*)

As is set forth in more detail in the Affidavit of Peter S. Brooks submitted herewith, the attorney rates charged to Cheng in connection with this case were comparable to, if not less than, rates charges by attorneys of similar skills and experience in the Boston area. (*Id.*, ¶¶5-6.) Attorney Brooks is a senior-level partner, he was the Chairman of Seyfarth Shaw LLP's Boston office's Litigation Practice Group prior to joining Saul Ewing LLP, and is an experienced trial lawyer with more than fifty (50) bench or jury trials and over thirty (30) appeals to state and federal courts. (*Id.*, ¶5.) In fact, in a recent case pending before Judge Keith C. Long in the Massachusetts Land Court, Judge Long found that "Mr. Brooks' rates [were] . . . eminently reasonable and fully in line with (indeed, those rates are below) those commonly charged by lawyers of his training, experience and stature in the Boston legal community." *Pelullo v. H&R Development LLC*, No. 10 MISC 431229, 2013 WL 151565, at *12 n.7 (Mass. Land Ct. Jan. 14, 2013). Similarly, the associate rates charged for Attorneys Berk, Mertineit, and Boucher, are comparable to rates charged by firm's of comparable size in the Boston-area for junior attorneys of their experience and skill. (Brooks Aff., ¶6.)

## ARGUMENT

### A. Cheng Is Entitled To An Award Of Reasonable Attorneys' Fees And Costs Under The Stored Communications Act.

Section 2707 of the SCA provides for a private right of action for violations of the privacy related statute. Section 2707(b), which is entitled "Relief," states "[i]n a civil action under this section, appropriate relief includes—(1) such preliminary and other equitable or declaratory relief as may be appropriate; (2) damages under subsection (c); and (3) a reasonable

attorney's fee and other litigation costs reasonably incurred." Several courts have found that an award of reasonable attorneys' fees and costs are appropriate under the SCA. *See, e.g., Van Alstyne v. Electronic Scriptorium, Ltd.*, 560 F.3d 199, 209 (4th Cir. 2009); *Wyatt Tech. Corp. v. Smithson*, No. CV 05-1309, 2006 WL 5668246, at *16 (C.D.Cal. Aug. 14, 2006), *rev'd on other grounds*, 345 Fed.Appx. 236 (9th Cir. 2009).

Romo will likely argue that an award of attorneys' fees and costs is discretionary under the SCA, but the plain language of the statute provides otherwise. First, § 2707(b) neither says that reasonable attorneys' fees and costs "may" be awarded to a successful plaintiff under the SCA nor that an award of reasonable attorneys' fees and costs can be awarded by a court "in its discretion" (which is the language used in 42 U.S.C. § 1988). Rather, § 2707(b) characterizes reasonable attorneys' fees and litigation costs as "appropriate" relief. Second, § 2707(b) provides that recovery of reasonable attorneys' fees and litigation costs is appropriate in addition to the "damages under subsection (c)." Section 2707(c) further states that "the court may assess the costs of the action, together with reasonable attorney fees determined by the court." The clear implication of the "together with" language of § 2707(c) is that the court has discretion to assess the costs of the action *in addition* to reasonable attorneys' fees determined by the Court. Although the reference to "costs" in § 2707(c) is duplicative of the reference in § 2707(b)(3), the mention of costs in § 2707(c) has been found to be "superfluous" in light of § 2707(b)(3). *See Van Alstyne*, 560 F.3d at 209. Indeed, courts have determined that attorneys' fees awards are mandatory under statutes with similarly worded attorneys' fee provisions. *See Edge v. Norfolk Financial Corp.*, No. Civ. A. 04-12134, 2005 WL 2323193, at *2 (D.Mass. Aug. 29, 2005) (citing cases finding that an award of reasonable attorneys' fees is mandatory to a prevailing party under the Fair Debt Collection Practices Act). Regardless, even if an award of attorneys'

fees and costs were discretionary, it is certainly appropriate in this case where the jury found that Romo willfully and intentionally violated the SCA and that her conduct was so deplorable and disturbing that it merited awards of $200,000 in actual damages and $125,000 in punitive damages to Cheng.

**B.     The Amount Of Attorneys' Fees And Costs Requested By Cheng In This Case Is Reasonable.**

"Ordinarily, the trial court's starting point in fee-shifting cases is to calculate a lodestar; that is, to determine the base amount of the fee to which the prevailing party is entitled by multiplying the number of hours productively expended by counsel times a reasonable hourly rate." *Lipsett v. Blanco*, 975 F.2d 934, 937 (1st Cir. 1992) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). "Typically, a court proceeds to compute the lodestar amount by ascertaining the time counsel actually spent on the case 'and then subtract[ing] from that figure hours which were duplicative, unproductive, excessive, or otherwise unnecessary.'" *Id.* (quoting *Grendel's Den, Inc. v. Larkin,* 749 F.2d 945, 950 (1st Cir. 1984)). "The court then applies hourly rates to the constituent tasks, taking into account the 'prevailing rates in the community for comparably qualified attorneys.'" *Id.* (quoting *United States v. Metropolitan Dist. Comm'n,* 847 F.2d 12, 19 (1st Cir. 1988) and citing *Grendel's Den,* 749 F.2d at 955). Ultimately, "[w]here a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." *Hensley*, 461 U.S. at 435.

As is set forth in detail in the Affidavit of Peter S. Brooks submitted herewith, the time spent on this case by Cheng's counsel was reasonable and the rates charged were consistent with the prevailing rates in the Boston-area for comparably qualified attorneys. *See Walsh v. Boston Univ.*, 661 F.Supp.2d 91, 110 (2009) ("in determining a reasonably hourly rate, the starting point is the prevailing market rate in the relevant community," *i.e.*, "where the court sits"). This case

was pending for nearly two and a half years, involved novel legal issues, substantial discovery, a complicated summary judgment motion, and a five-day jury trial. In large part, the amount of time spent on this case by Plaintiff's counsel was a function of, and substantially increased by, the litigation strategy of the Defendant. Cheng had to respond to Romo's complex summary judgment motion, which had a remote likelihood of success (whether Romo had authorization to access Cheng's e-mail was likely to be found a disputed issue of fact). Cheng also had to spend a significant amount of time at and before trial addressing peripheral, arguably irrelevant issues that Romo insisted on raising over Cheng's objections. The 573.9 hours billed to Cheng in this case, which amounts to approximately 20 hours per month since the case's inception, was productive time, was divided appropriately among partners and associates, and was reasonable in light of the scope of the litigation and Plaintiff's ultimate success. *See* Brooks Aff., Exs. A, B and C; *Coutin v. Young & Rubicam Puerto Rico, Inc.*, 124 F.3d 331, 339 (1st Cir. 1997) ("[i]f a prevailing party is successful on all (or substantially all) of her claims, and receives complete (or near-complete) relief, it goes without saying that reasonable fees should be paid for time productively spent, without any discount for limited success").[1]

Finally, the rates charged by Cheng's counsel in this case were also fair and reasonable. Attorney Brooks' rate of $550-$575 per hour is comparable to other similarly experienced trial attorneys in Boston at large or mid-sized firms (if not lower as Judge Long suggested in the *Pelullo* case). Attorney Brooks is a senior-level partner, prior to joining Saul Ewing he was the Chairman of a national firm's (Seyfarth Shaw) Boston office Litigation Practice Group, and he

[1] The fact that Plaintiff's case included a claim under the Massachusetts Privacy Act is irrelevant for purposes of determining the amount of an award of attorneys' fees and costs under the SCA. Where claims "involve a common core of facts or [are] based on related legal theories . . . the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Hensley*, 461 U.S. at 435.

has extensive trial experience. The rates charged for associates' work on this case (between $305 and $350) are also comparable to the rates charged by attorneys of similar skill and experience in the Boston area. Attorney Berk is a 2005 graduate of Northeastern School of Law. He spent a year as a judicial law clerk in the Rhode Island Superior Court following graduation and has been practicing law as a commercial litigator at large or mid-sized firms in Boston for the past seven years. Attorney Mertineit is a 2007 graduate of Boston University School of Law and has been practicing at Seyfarth Shaw since she was admitted to the bar that year.

**CONCLUSION**

Based on the foregoing, and the accompanying Affidavit of Peter S. Brooks, Plaintiff David Cheng, M.D. requests that the Court grant his Motion for Attorneys' Fees and Costs and Order Defendant Laura Romo, M.D. to pay him $244,688.53 plus interest or such other amount the Court deems appropriate.

DAVID CHENG, M.D.,

By his attorney,

*/s/ Zachary W. Berk*

Peter S. Brooks (BBO #058980)
pbrooks@saul.com
Zachary W. Berk (BBO #663575)
zberk@saul.com
SAUL EWING LLP
131 Dartmouth Street, Suite 501
Boston, MA 02116
Tel: (617) 723-3300
Fax: (617) 723-4151

DATED: May 10, 2013

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non registered participants on May 10, 2013.

/s/ *Zachary W. Berk*
Zachary W. Berk