UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____

|  |  |  |
|---|---|---|
| DAVID CHENG, M.D., | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | |
| v. | ) | Civil Action No. 11-10007-DJC |
| | ) | |
| LAURA ROMO, M.D., | ) | |
| | ) | |
| **Defendant.** | ) | |

_____)

## MEMORANDUM AND ORDER

CASPER, J.                                                                  December 20, 2013

## I.    Introduction

Plaintiff David Cheng, M.D. ("Cheng") sued Defendant Laura Romo, M.D. ("Romo"), alleging a violation of the Stored Communications Act ("SCA"), 18 U.S.C. §§ 2701–2712 (2012), ("Count I") and an invasion of privacy in violation of Mass. Gen. L. c. 214, § 1B ("Count II"). D. 1 at 4-5. The matter was tried before a jury. After Plaintiff Cheng rested his case, Defendant Romo orally moved for judgment as a matter of law as to Count I. D. 70. The Court reserved issuing its ruling. Id. The jury later returned a verdict for Cheng on both counts. D. 77. Since return of the jury verdict, Romo has renewed her pre-verdict motion. D. 93. For the reasons stated below, the Court DENIES Romo's motion for judgment as a matter of law.

## II.    Standard of Review

The Court may grant judgment as a matter of law if, after presentation of the nonmoving party's case, there is not a "'legally sufficient evidentiary basis' for a reasonable jury to find for that party." Mag Jewelry Co. v. Cherokee, Inc., 496 F.3d 108, 117 (1st Cir. 2007) (quoting Fed. R. Civ. P. 50(a)(1)). The Court "may not consider the credibility of witnesses, resolve conflicts

in testimony, or evaluate the weight of the evidence." <u>Mandel v. Boston Phoenix, Inc.</u>, 456 F.3d 198, 207-08 (1st Cir. 2006) (quoting <u>Cook v. R.I. Dep't of MHRH</u>, 10 F.3d 17, 21 (1st Cir. 1993)). Rather, the Court "examin[es] the evidence and all reasonable inferences therefrom 'in the light most favorable to the nonmovant' [and asks whether] 'the evidence could lead a reasonable person to only one conclusion,' favorable to the movant." <u>Caldwell Tanks, Inc. v. Haley & Ward, Inc.</u>, 471 F.3d 210, 214-15 (1st Cir. 2006) (quoting <u>Aetna Cas. Sur. Co. v. P & B Autobody</u>, 43 F.3d 1546, 1556 (1st Cir. 1994)).

## III.   Discussion

### A.   Romo Disputes Whether Certain Emails Were In "Electronic Storage" As That Term Is Used In The SCA

Romo has filed a motion seeking judgment as a matter of law that she did not violate the Stored Communications Act, 18 U.S.C. §§ 2701–2712, and thus is not liable under Count I. Cheng sued Romo under a statute that provides:

[W]hoever--

(1) intentionally accesses without authorization a facility through which an electronic communication service is provided; or

(2) intentionally exceeds an authorization to access that facility;

and thereby obtains, alters, or prevents authorized access to a wire or electronic communication <u>while it is in electronic storage</u> in such system shall be [liable].

18 U.S.C. § 2701(a) (emphasis added). In this case, Romo admitted accessing a number of Cheng's emails that were stored in Cheng's Yahoo! email account. D. 95 at 33-34. Romo accessed these emails by logging into Cheng's email account using Cheng's password and reading the emails. <u>Id.</u> at 18-19. Romo argues that at the time she read Cheng's emails, they had previously been opened by Cheng and, therefore, were not in "electronic storage" as that term

appears in 18 U.S.C. § 2701(a).  D. 71 at 8-16.  "Electronic storage" is defined by statute to mean:

> (A) any temporary, intermediate storage of a wire or electronic communication incidental to the electronic transmission thereof; and
>
> (B) any storage of such communication by an electronic communication service for purposes of backup protection of such communication[.]

18 U.S.C. § 2510(17) (2012) (incorporated by 18 U.S.C. § 2711(1)).[1]  Here, Romo argues that the emails in Cheng's account where neither "temporary, intermediate storage of a wire or electronic communication incidental to the electronic transmission thereof" nor "storage of such communication by an electronic communication service for purposes of backup protection of such communication."  D. 71 at 8-16.  Cheng argues that the emails are covered at least by the second prong of the statute and that the emails, whether previously opened by Cheng or not, were being stored "for purposes of backup protection" and subject to protection under the SCA and to hold otherwise would result in "an illogical interpretation of [the SCA] that does not comport with the relevant case lay, the plain language of the stature or legislative intent."  D. 83 at 1.  The Court agrees with Cheng.

**B.    Cheng's Emails Were In "Electronic Storage"**

This Court has already cited case law and commentary identifying imperfections in the Stored Communications Act's statutory language.  Cheng v. Romo, No. 11-10007-DJC, 2012 WL 6021369, at *3 (D. Mass. Nov. 28, 2012) (quoting Orin Kerr, A User's Guide to the Stored

---

[1]Romo briefly argues that both prongs of this definition must be met for a communication to be in electronic storage. D. 71 at 8 n.4. The Court joins the "majority of courts," see Jennings v. Jennings, 401 S.C. 1, 5 (2012) (collecting cases), to hold that "an e-mail can be in electronic storage if it meets either (A) or (B)." Id. What Jennings identifies as the "majority" view of the statutory construction comports with the fact that the statute appears to describe two different purposes for the storage, i.e., storage "incidental to transmission," and storage for "backup protection." 18 U.S.C. § 2510(17).

Communications Act, and a Legislator's Guide to Amending It, 72 Geo. Wash. L. Rev. 1208,

1208, 1240 (2004)).  Compounding the problem of the statute's "vague language" has been the

passage of time; the statutory definition of "electronic storage" has not changed since 1986 when

the definition was first introduced, Pub. L. No. 99-508, § 1, 100 Stat. 1848, 1849 (1986), and

does not necessarily reflect changes in technology since then:

> Much of the difficulty in applying the SCA to cases such as this arises because of
> the discrepancy between current technology and the technology available in 1986
> when the SCA was first enacted.  When the SCA was enacted, the process of
> network communication was still in its infancy; the World Wide Web, and the
> Internet as we know it, did not arrive until 1990. William Jeremy Robison, Free
> At What Cost?: Cloud Computing Privacy Under the Stored Communications
> Act, 98 Geo. L.J. 1195, 1198 (2010). . . . The SCA is ill-fitted to address many
> modern day issues, but it is this Court's duty to interpret, not legislate.

Jennings, 401 S.C. at 12-13. (Toal, C.J. concurring in result).  "To provide some context, when

[the statutory definition] was enacted in 1986 . . . the first web page was still four years away

from being developed, and the first graphical web browser was over seven years away."  Achal

Oza, Amend the ECPA: Fourth Amendment Protection Erodes as E-Mails Get Dusty, 88 B.U. L.

Rev. 1043, 1055-56 (2008).  That is, web-based email systems of the sort at issue in this case did

not exist when the term "electronic storage" was defined.

The Court has reviewed a number of cases that have addressed whether web-based email

systems like the Yahoo! email system at issue in this lawsuit fall under the SCA and whether

emails within such a system are in "electronic storage."  Compare, e.g., Theofel v. Farey-Jones,

359 F.3d 1066, 1075 (9th Cir. 2003) (finding emails were in electronic storage) with United

States v. Weaver, 636 F. Supp. 2d 769, 770-73 (C.D. Ill. 2009) (holding in the context of a

criminal subpoena that "[p]reviously opened emails stored by Microsoft for Hotmail [email

system] users are not in electronic storage"); United States v. Warshak, 631 F.3d 266, 291 (6th

Cir. 2010) (same).  Although this difference is not surprising given the difficulties of applying a

term of art to a technology that did not exist when the statute was written, the Court finds the arguments reached by the former court (and courts reaching the same result) to be more persuasive.  The First Circuit and the Supreme Court have not resolved this question, but the Court finds here that Cheng's emails were in "electronic storage" for the reasons given below.[2]

### 1.    The Definition of "Electronic Storage" found at 18 U.S.C. § 2510(17)(B) Is Applicable to Romo's Access of Cheng's Emails

Romo argues that Cheng's emails also do not fall under 18 U.S.C. § 2510(17)(B) "because Yahoo!'s server was the only location at which the emails were stored when Defendant accessed them, [so] they could not possibly have served as 'backup' storage."  D. 71 at 9. However, the record reflects that when Romo used her web browser to access Cheng's emails, the text of those emails were transmitted to her own Internet browser, which is how she was able to see, and later print, Cheng's emails.  See D. 97 at 14 (testimony by Cheng that one "could download a representation of the web page as it was displayed to [a user] by the Yahoo! server"). The reasonable inference based on the trial testimony is that regardless of the number of times Cheng or Romo viewed Cheng's email (by downloading web page representations of those emails into their personal computer's web browser) the Yahoo! server continued to store copies of those same emails that previously had been transmitted to Cheng's web browser, and again to Romo's web browser.   On this record, Cheng's emails were held in "storage of such communication by an electronic communication service for purposes of backup protection of

---

[2] Romo has filed a notice of supplemental authority, D. 103-1, citing a recently decided district court case, Lazette v. Kulmatycki, No. 12-2416, 2013 WL 2455937 (N.D. Ohio Jun. 5, 2013).  To the extent that the court in that case reached a different conclusion, id. at *7, it is not compelling for the reasons stated above.

such communication."  This conclusion holds true irrespective of Cheng's testimony that <u>Cheng himself</u> did not further back up his emails.[3]

The Court is aware of cases that involve the same Yahoo! email service.  In <u>Bailey v. Bailey</u>, No. 07-11672, 2008 WL 324156 (E.D. Mich. Feb. 6, 2008), after the defendant accessed the plaintiff's Yahoo! email without permission, plaintiff sued and alleged a SCA violation.  <u>Id.</u> at *1-2, 5-6.  The <u>Bailey</u> court adopted the reasoning of <u>Theofel v. Farey-Jones</u>, 359 F.3d 1066 (9th Cir. 2003), quoting the language from the <u>Theofel</u> case that states:

> There is no dispute that messages remaining on NetGate's server after delivery are stored 'by an electronic communication service' within the meaning of 18 U.S.C. § 2510(17)(B). . . . The only issue, then, is whether the messages are stored 'for purposes of backup protection.'  18 U.S.C. § 2510(17)(B).  We think that, within the ordinary meaning of those terms, they are.
>
> An obvious purpose for storing a message on an ISP's server after delivery is to provide a second copy of the message in the event that the user needs to download it again-if, for example, the message is accidentally erased from the user's own computer.  The ISP copy of the message functions as a 'backup' for the user.  Notably, nothing in the Act requires that the backup protection be for the benefit of the ISP rather than the user. Storage under these circumstances thus literally falls within the statutory definition.

<u>Bailey</u>, 2008 WL 324156, at *6.  The <u>Bailey</u> court "agree[d] with the reasoning in <u>Theofel</u>" even though (as this Court observes) in <u>Theofel</u> the emails had previously been downloaded through an email client program, 359 F.3d at 1075 n.3., and in <u>Bailey</u> the emails had been previously downloaded through a web browser.  The <u>Bailey</u> court implicitly accepted the fact that even after a user closes his web browser after reading emails from his Yahoo! account, a second copy of

---

[3] The statute does not specify <u>whose</u> "purposes of backup protection" are relevant.  <u>See, e.g.,</u> <u>Jennings</u>, 401 S.C. at 14 n.4 (Pleicones, J. concurring) (opining that "[t]he 'backup' covered by subsection (B) is a copy made by the service provider to back up its own servers'"); <u>Theofel</u>, 359 at 1075 (holding that "[a]n obvious purpose for storing a message on an ISP's server after delivery is to provide a second copy of the message in the event that the user needs to download it again—if, for example, the message is accidentally erased from the user's own computer.  The ISP copy of the message functions as a "backup" for the user.  Notably, nothing in the Act requires that the backup protection be for the benefit of the ISP rather than the user").

those messages still existed on the Yahoo! server (in the words of <u>Theofel</u>) "in the event that the user need[ed] to download it again."   <u>Theofel</u>, 359 F.3d at *1075.

The court in <u>Jennings</u>, 401 S.C. at 3, 6-7, reached a different outcome on similar facts.  In <u>Jennings</u>, after the defendant accessed plaintiff's Yahoo! email without permission, the plaintiff sued and alleged a SCA violation.  <u>Id.</u> at 3.  The court noted that "[a]fter opening [his emails], [the plaintiff] left the single copies of his e-mails on the Yahoo! server and apparently did not download them or save another copy of them in any other location."  <u>Id.</u> at 7.  On that basis, and where "Congress's use of 'backup' necessarily presupposes the existence of another copy to which this e-mail would serve as a substitute or support [the Court] conclude[d] that as the single copy of the communication, Jennings' e-mails could not have been stored for backup protection."  <u>Id.</u>

This Court disagrees with the <u>Jennings</u> court's reasoning where in fact, Cheng's initial access of his email did cause a "representation of the web page [containing the email be] displayed to [him] by the Yahoo! server" and a backup of that email remained on the Yahoo! server.  D. 97 at 14.  The web based access mechanism is simply the modern day equivalent of how email was accessed in 1986, when the SCA was passed.  <u>See</u> <u>United States v. Councilman</u>, 418 F.3d 67, 69-70, & n.3 (1st Cir. 2005) (en banc) (describing the technical details of how an email is accessed, and noting that "[i]n some cases, the e-mail client program is accessed through the World Wide Web. This does not change the present discussion").  In other words, <u>Jennings</u> suggests that a copy of an email remaining on a remote server after being downloaded to what <u>Councilman</u> calls an "e-mail client program" running on a personal computer could fall under 18 U.S.C. § 2510(17)(B), but that a copy of an email remaining on an remote server after being downloaded to a web browser would not.  Such a distinction is not supported by the statute or by

the limited guidance on this point offered by the First Circuit in Councilman and cases that have followed the First Circuit's approach.  Pure Power Boot Camp v. Warrior Fitness Boot Camp, 587 F. Supp. 2d 548, 555 (S.D.N.Y. 2008) (noting that "[t]he majority of courts which have addressed the issue have determined that e-mail stored on an electronic communication service provider's systems after it has been delivered, as opposed to e-mail stored on a personal computer, is a stored communication subject to the SCA) (citing Councilman, 418 F.3d at 79; Fraser v. Nationwide Mut. Ins. Co., 352 F.3d 107, 115 (3rd Cir. 2003); Hall v. EarthLink Network, Inc., 396 F.3d 500, 503 n. 1 (2d Cir.2005) (finding unpersuasive the argument that an e-mail in storage is not an "electronic communication")).  Moreover, it would be difficult to justify such a result premised upon such a technical distinction.

Indeed, at least one court has observed that web-based email systems such as Yahoo! also provide a mode access where a user can download emails using a non-web based client and that this different mode of access can change the liability under the SCA.  Weaver, 636 F. Supp. 2d at 772 (noting that "[a] Hotmail user can opt to connect an email program, such as Microsoft Outlook, to his or her Hotmail account and through it download messages onto a personal computer, but that is not the default method of using Hotmail.  Thus, unless a Hotmail user varies from default use . . . Microsoft is not storing that user's opened messages for backup purposes").  The Court rejects the reasoning upon which Romo relies, where it would make Romo's legal liability for accessing Cheng's emails turn on what piece of software (i.e., web browser vs. email client) Cheng happened to use to access his email account.  See Jennings, 401 S.C. at 9 (Toal, C.J. concurring in result).  Cf. Shefts v. Petrakis, No. 10-cv-1104, 2012 WL 4049484, at *7 n.21 (C.D. Ill. Sept. 13, 2012) (noting that "[a] person's email should not be excluded from ECPA protection merely because of the mechanism by which the email system

8

operates").  This is especially true where the clear intent of the SCA was to protect a form of

communication in which the citizenry clearly has a strong reasonable expectation of privacy.

Penrose Computer Marketgroup, Inc. v. Camin, 682 F. Supp. 2d 202, 209 (N.D.N.Y. 2010)

(citation and internal quotation marks omitted) (opining that "[t]he purpose of the SCA was, in

part to protect privacy interests in personal and proprietary information and . . . electronic or wire

communications that are not intended to be available to the public"); see also Warshak, 631 F.3d

at 284 (discussing basis for finding that email communications were subject to Fourth

Amendment protections where "[l]overs exchange sweet nothings, and businessmen swap

ambitious plans, all with the click of a mouse button").

Romo argues that the Ninth Circuit's ruling in Theofel, 359 F.3d at 1071-75, supports her

position.[4]  Romo argues that the Theofel supports her view where according to that court:

> [T]he lifespan of a backup is necessarily tied to that of the underlying message.
> Where the underlying message has expired in the normal course, any copy is no
> longer performing any backup function.  An ISP that kept permanent copies of
> temporary messages could not fairly be described as "backing up" those
> messages.

D. 71 at 10 (quoting id. at 1076).  Romo reads that passage out of context however, where that

passage is describing the sort of temporary messages covered by 18 U.S.C. § 2710(17)(A).

Romo also argues that Theofel supports her view with the highly technical observation that:  "[a]

remote computing service might be the only place a user stores his messages; in that case, the

messages are not stored for backup purposes."  D. 71 at 11 (quoting Theofel, 359 F.3d at 1076-

77).  But here, Yahoo! was acting as an "electronic communication service" defined as "any

---

[4]  To the extent this Court finds guidance in Theofel, the pertinent reasoning in that case
supports the Court's holding, as noted above.  The Court also recognizes that as influential as
that case has been since its publication, the Theofel opinion has been the subject of some
criticism.  See, e.g., Kerr, at 1217 (2004) (arguing that "the Ninth Circuit's analysis in [Theofel]
is quite implausible and hard to square with the statutory text'"); Jennings, 401 S.C. at 10 (Toal,
C.J. concurring in result) (arguing for a "a rejection of Theofel entirely").

service which provides to users thereof the ability to send or receive wire or electronic communications." 18 U.S.C. § 2510(15); 18 U.S.C. § 2711(1).  See also Theofel, 359 F.3d at 1076-77 (noting that some "remote computing services . . . are also electronic communication services"); Councilman, 418 F.3d at 85 (applying the SCA's provisions applicable to an "electronic communication service" to an email service provider).

IV.     Conclusion

Here, there was a "'legally sufficient evidentiary basis' for a reasonable jury to find for [Cheng]" on Count I, the SCA claim.  Mag Jewelry Co., 496 F.3d at 117.  For the reasons stated above, the Court DENIES Romo's motion for judgment as a matter of law on Count I.

So Ordered.

/s/ Denise J. Casper
United States District Judge