UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DAVID CHENG, M.D., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>LAURA ROMO, M.D., )<br>)<br>Defendant. )<br>) | Civil Action No. 11-10007-DJC |

MEMORANDUM AND ORDER

CASPER, J.                                                                                                   March 6, 2014

## I. Introduction

As part of the Court's order on Defendant Laura Romo ("Romo")'s motion for a judgment as a matter of law, D. 107, the Court ordered a response to Plaintiff David Cheng ("Cheng")'s motion for attorneys' fees, D. 84. Having reviewed same, the Court addresses the issues discussed by Romo.

## II. Discussion

### A. Standard of Review

Attorneys' fees are calculated by determining a "lodestar amount" and then, if necessary, adjusting that amount to ensure that the fee amount is reasonable. Pennsylvania v. Del. Valley Citizens' Council for Clean Air, 478 U.S. 546, 564–65 (1986). Federal courts in this circuit customarily use the lodestar approach to determine fee amounts. Burke v. MacDonald, 572 F.3d 51, 56 n.5 (1st Cir. 2009). To calculate the appropriate lodestar amount, this Court must

1

determine "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Gay Officers Action League v. Puerto Rico, 247 F.3d 288, 295 (1st Cir. 2001) (citation omitted). The party seeking an award of attorneys' fees bears the burden of establishing and documenting the hours expended and the hourly rates charged. Torres–Rivera v. O'Neill–Cancel, 524 F.3d 331, 340 (1st Cir. 2008).

Here, Cheng's attorneys have provided the appropriate documentation of the hours expended and rates charged. D. 86; D. 86-1; D. 86-2; D. 86-3. Specifically, Cheng has presented the Court with documentation for fees and costs totaling $244,688.53. D. 84. With the exception of hours spent opposing Romo's motion for summary judgment, Romo has conceded the validity of the tasks performed and hours spent. See D. 115 at 11. Moreover, with the exception of the reduction discussed below in subsection E, the Court finds that the fees billed in this case were reasonable. This Court bases this finding on the sequence of the litigation in which the parties engaged in discovery, briefed a motion for summary judgment that raised complex and novel legal issues, tried the case to a jury and briefed post-trial motions. D. 20, 58, 60, 65, 70, 71, 75, 84. In addition, the Court accepts the uncontested representations of counsel for Cheng that the billing rates for Cheng's attorneys are fair and reasonable. D. 86 ¶¶ 5-7.

However, Romo raises the following arguments in support of her opposition to the motion for attorneys' fees.

### B. Although Attorneys' Fees are Discretionary Under the Stored Communications Act, the Court Sees No Reason to Withhold Them Here

Romo argues that attorneys' fees are discretionary, and that therefore, the Court should decline to award them in this case. As an initial matter, the Court agrees that an award of attorneys' fees is discretionary under the Stored Communications Act ("SCA"), 18 U.S.C. §§

2701, 2707. The plain language of the statute compels this conclusion. The SCA provides that plaintiffs who demonstrate a knowing violation of the SCA "may . . . recover . . . such relief as may be appropriate," which includes "a reasonable attorney's fee." 18 U.S.C. § 2707(a), (b)(3). The use of the term "may" clearly evinces Congress's intent to make the award of attorneys' fees permissive and not mandatory. Other courts have reached the same conclusion. See Tech Sys., Inc. v. Pyles, No. 12-cv-374, 2013 WL 4033650, at *4 (E.D. Va. Aug. 6, 2013) (noting that the SCA provides "within the court's discretion, a right to reasonable attorney's fees"); Losapio v. Comcast Corp., No. 10-CV-3438, 2011 WL 1497652, at *5 (N.D. Ga. Apr. 19, 2011) (noting plaintiff's concession that "the SCA . . . allow[s] discretionary attorneys fees"); Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC, 759 F. Supp. 2d 417, 429-30 (S.D.N.Y. 2010).

Nevertheless, Congress has demonstrated a clear interest in enforcing the fee shifting provisions of the SCA to deter future violations of the statute. For example, in passing the Video Privacy Protection Act, the Senate noted that:

> The civil remedies section puts teeth into the legislation, ensuring that the law will be enforced by individuals who suffer as the result of unauthorized disclosures. It provides that an individual harmed by a violation of the Act may seek compensation in the form of . . . attorneys' fees and costs.
>
> Statutory damages are necessary to remedy the intangible harm caused by privacy intrusions. Similar remedies exist in [the SCA] as revised by this committee in 1986. The absence of such a remedy in the Privacy Act of 1974 is often cited as a significant weakness.

S. Rep. No. 100–599, at 8 (1988), reprinted in 1988 U.S.C.C.A.N. 4342–1, 4342–8; see Sterk v. Redbox Automated Retail, LLC, No. 11-1729, 2012 WL 3006674, at *4 (N.D. Ill. July 23, 2012) (comparing Video Privacy Protection Act with SCA). The importance of deterrence is no less pronounced here, where a civil jury found Romo's actions to be knowing and intentional. D. 77; see 18 U.S.C. § 2707; Tech Sys., Inc., 2013 WL 4033650, at *4 (awarding fees and costs based

upon intentional conduct). The Court therefore declines to reduce Cheng's attorneys' fees award for the reasons further explained below.

### C. The Proportion of Attorneys' Fees to Actual Damages Does Not Warrant a Reduction in the Fee Award

Romo argues that the Court should reduce Cheng's fee award to "retain a sense of overall proportion." D. 115 at 5 (citation and internal quotation marks omitted). Essentially, Romo asks the Court to reduce the fee award because the jury attributed only $50,000 of the $200,000 compensatory damages award to Romo's unauthorized access of Cheng's email account (i.e. the conduct that the jury found was in violation of 18 U.S.C. § 2701). Id. Moreover, Romo posits that "Cheng presented no evidence as to the quantifiable magnitude of harm he suffered due to Romo's conduct." Id. at 6.

There was evidentiary support for an award of compensatory damages in that, for example, Cheng testified that he felt "shocked, and I felt violated that somebody would go into, you know, read my personal e-mails." D. 96 at 148. In addition, even if Cheng had not proven actual damages, this would not preclude an award of attorneys' fees because "[m]any district courts interpreting this statutory language have not required a showing of actual damages in order to recover statutory damages." Chadha v. Chopra, No. 12-4204, 2012 WL 6044701, at *3 (N.D. Ill. Dec. 5, 2012) (collecting cases regarding the SCA).

Ultimately, Romo is incorrect that there is any particular significance to the relationship between the magnitude of actual damages and the magnitude of attorneys' fees. As the First Circuit has found, it would be "an error of law for [this] court to link the amount of recoverable attorneys' fees solely to the amount of [Cheng's] damages." Joyce v. Town of Dennis, 720 F.3d 12, 31 (1st Cir. 2013). "Fee-shifting provisions in general reflect a legislative judgment that the public as a whole has an interest in the vindication of the rights conferred by the statutes . . . over

4

and above the value of a . . . remedy to a particular plaintiff." Id. (quoting City of Riverside v. Rivera, 477 U.S. 561, 574 (1986) (further citation and alterations omitted)). Accordingly, it would be error for the Court to reduce the fee award based upon proportionality, where Congress has determined that an award of attorneys' fees is appropriate under these circumstances.

Even if the Court were to consider proportionality, it would decline to reduce the fee award based upon the damages that the jury awarded here. At trial, Cheng recovered $325,000 of compensatory and punitive damages. D. 77. Cheng now seeks attorneys' fees in an amount that is more than $100,000 less. This is not a case where the jury awarded only nominal damages. Cf. Williams v. Town of Randolph, 574 F. Supp. 2d 250, 252 (D. Mass. 2008) (denying attorneys' fees to plaintiff who recovered only nominal damages of one dollar at trial). Accordingly, the Court rejects Romo's argument that a reduction is appropriate on this ground.

### D. Advanced Radiology, Inc.'s Advancement of Cheng's Attorneys' Fees Does Not Preclude His Recovery of Attorneys' Fees

Romo argues that Cheng should not be entitled to recover attorneys' fees because Cheng's medical practice, Advanced Radiology, Inc. (where he is a partner) has advanced Cheng's attorneys' fees. D. 115 at 9-11. Romo cites a single out-of-circuit district court case for the proposition that a third party's advancement of legal fees may be a factor which the court considers in deciding whether to exercise its discretion in awarding fees. ABC, Inc. v. Primetime 24, 67 F. Supp. 2d 558, 562 (M.D.N.C. 1999), aff'd, 232 F.3d 886 (4th Cir. 2000). What this case also says, however, is that "courts have consistently held that the fact that a third party has paid some or all of the prevailing party's legal fees does not bar a recovery of statutory attorney's fees." Id. (citing Pickering v. Holman, 459 F.2d 403, 407-08 (9th Cir. 1972)). Courts in this circuit have reached the same conclusion. RFF Family P'ship, LP v. Link Dev., LLC, 932 F. Supp. 2d 213, 227 (D. Mass. 2013) (noting that "[t]he fact that a third party insurer may be

obligated to pay a prevailing party's legal fees does not prohibit the prevailing party from recovering legal fees"); Hudson v. Dennehy, 568 F. Supp. 2d 125, 130 n.11 (D. Mass. 2008) (awarding attorneys' fees to law firm that handled prevailing party's claim on a *pro bono* basis). In addition, although Advanced Radiology has advanced Cheng's attorneys' fees in this litigation, Cheng testified at trial that these funds were merely a loan and not an unconditional transfer, D. 97 at 33, thus obviating Romo's concerns that a fee award would amount to a windfall. The Court declines to reduce Cheng's fee award on this ground.

> E.   **A Modest Reduction of Cheng's Fee Award Is Appropriate In Light of Cheng's Attorneys Changing Firms During the Pendency of the Litigation**

Romo argues that the Court should reduce Cheng's fee award because two of Cheng's attorneys changed law firms immediately prior to responding to Romo's summary judgment motion. D. 115 at 11-13. Romo notes that prior to the move, Dawn Mertineit, Esq. was the principal associate assisting Peter Brooks, Esq. and that when Mr. Brooks and Zachary Berk, Esq. moved to Saul Ewing LLP, Mr. Berk became the principal associate assisting Mr. Brooks. Id. at 12. Romo argues that in light of Mr. Berk's new responsibilities relative to this litigation, he needed to educate himself on the factual record to provide assistance in opposing Romo's motion for summary judgment. Id.

Courts in this district and elsewhere have reduced fee awards in light of demonstrable inefficiencies caused by attorneys' changing firms. Yankee Candle Co., Inc. v. Bridgewater Candle Co., LLC, 140 F. Supp. 2d 111, 125 (D. Mass. 2001) (reducing fee award by 10 percent where chief counsel for plaintiff "changed firms, mid-stream reducing efficiency somewhat"); see also Cartel Asset Mgmt. v. Ocwen Fin. Corp., No. 01-CV-01644-REB-CBS, 2012 WL 967699, at *3 (D. Colo. Mar. 20, 2012) (finding that some duplicative work resulted from change of law firms); but see Oreck Direct, LLC v. Dyson, Inc., No. 07-2744, 2009 WL 1649503, at *3

(E.D. La. June 8, 2009) (declining to reduce fee award where new law firm was retained for appellate portion of litigation and spent time "getting up to speed" on the case).

Here, Cheng's attorneys spent 90.8 hours preparing Cheng's opposition to Romo's motion for summary judgment at a cost of approximately $36,155. D. 86-1 at 42-45. However, in reviewing the billing entries of Messrs. Brooks and Berk, it appears that much of this time was spent conducting research on the novel legal issues presented by Romo in her motion. As Romo did not move to dismiss the complaint at the outset of this litigation, see D. 5 (answer), Romo's motion for summary judgment was the first opportunity either party had to explore this somewhat undeveloped area of the law. That is, even if Messrs. Brooks and Berk did not have the benefit of Ms. Mertineit's knowledge of the facts, it is not clear exactly how prominent of a role this knowledge would have played in assisting Mr. Brooks with Cheng's opposition to the motion for summary judgment.[1] On the other hand, the facts of this case clearly did play some role in the summary judgment briefing, as Messrs. Brooks and Berk were required to prepare a Rule 56.1 statement of facts as well as an extensive facts section in their memorandum. See D. 26 at 1-8.

Romo also points out that her attorneys dedicated only 56.3 hours to her motion for summary judgment, which addressed the same legal issues as Cheng's opposition. D. 115 at 12 n.4. Although comparisons to other cases are not necessarily helpful given that every case is different, courts in this circuit have found requests for fees unreasonable where prevailing parties have devoted approximately this many hours to summary judgment briefing. See Horney v. Westfield Gage Co., 227 F. Supp. 2d 209, 216 (D. Mass. 2002) (finding 84 hours to research and

---

[1] In addition, Cheng asserts that as counsel for Advanced Radiology, Inc. in the parties' parallel Rhode Island litigation, Mr. Berk was already aware of the facts prior to his involvement in this case. D. 120 at 5 n.1.

draft opposition to summary judgment motion unreasonable in employment discrimination litigation); <u>McLaughlin ex rel. McLaughlin v. Boston Sch. Comm.</u>, 976 F. Supp. 53, 61 (D. Mass. 1997) (finding 63.04 hours devoted to cross-motions for summary judgment unreasonable in civil rights litigation).  In light of the foregoing, the Court will reduce the portion of the fee award dedicated to preparing the opposition to Romo's motion for summary judgment by 10 percent.  Accordingly, whereas Cheng's attorneys billed $36,155.00 for the preparation of their opposition to the motion for summary judgment, the Court reduces this amount to $32,539.50, a reduction of $3,615.50.

## VI.  Conclusion

For the foregoing reasons, the Court awards Cheng attorneys' fees and costs totaling $241,073.03.

**So Ordered.**

/s/ Denise J. Casper  
United States District Judge