```
 1                  UNITED STATES DISTRICT COURT
                      DISTRICT OF MASSACHUSETTS
 2

 3    _____

 4    DAVID CHENG, M.D.,

 5                       Plaintiff,        Civil Action
                                           No. 11-10007-DJC
 6    V.
                                           April 26, 2013
 7    LAURA ROMO, M.D.,

 8                       Defendant.
      _____
 9

10

11           EXCERPT TRANSCRIPT OF JURY TRIAL DAY 5

12               INSTRUCTIONS TO THE JURY

13          BY THE HONORABLE DENISE J. CASPER

14             UNITED STATES DISTRICT COURT

15           JOHN J. MOAKLEY U.S. COURTHOUSE

16                 1 COURTHOUSE WAY

17                BOSTON, MA  02210

18

19

20

21
                   DEBRA M. JOYCE, RMR, CRR
22                  Official Court Reporter
                 John J. Moakley U.S. Courthouse
23               1 Courthouse Way, Room 5204
                     Boston, MA  02210
24                    617-737-4410

25
```

1  APPEARANCES:

2  FOR THE PLAINTIFF:

3  PETER S. BROOKS, ESQ.
   ZACHARY W. BERK, ESQ.
4  Saul Ewing LLP
   131 Dartmouth Street, Suite 501
5  Boston, MA 02116
   617-723-3300
6
   FOR THE DEFENDANT:
7
   JOSEPH V. CAVANAGH, III, ESQ.
8  ROBERT J. CAVANAGH, JR.
   Blish & Cavanagh
9  30 Exchange Terrace
   Providence, RI 02903
10 401-831-8900

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

P R O C E E D I N G S

(The following proceedings were held in open court before the Honorable Denise J. Casper, United States District Judge, United States District Court, District of Massachusetts, at the John J. Moakley United States Courthouse, 1 Courthouse Way, Boston, Massachusetts, on April 26, 2013.)

\* \* \* \* \* \* \* \* \*

THE COURT:  Jurors, we've come to the part of the trial now where I give you the instructions of law.  If at any point during these instructions you can't hear me, please raise your hand and I'll raise my voice.

Jurors, you have now heard the evidence and the closing arguments in this case.  It is now my duty to instruct you on the law that you must follow and apply.  These instructions are somewhat complicated, and I ask you to pay very careful attention.  I need to read them because I haven't committed them to memory.  I ask that you do your best to listen carefully and stay with me.

It is your duty to find the facts from the evidence admitted in this case.  You are the sole and exclusive judges of the facts.  You shall determine the weight, the value, and effect of the evidence that has been presented to you in the course of the trial.  Where there are disputes about material facts, about what actually happened, it is up to you, the jury, to resolve these disputes in reaching your verdict.  You must

1    determine the facts without fear or favor, based solely on a

2    fair consideration of the evidence.  That means that you must

3    be completely fair and impartial, swayed neither by prejudice

4    nor sympathy, nor emotion, nor any personal likes or dislikes.

5    Your responsibility is to weigh the evidence in this case

6    fairly and impartially.

7         To those facts you must apply the law as I give it to

8    you.  The determination of the law is my duty as the judge.  It

9    is your duty to apply the law exactly as I give it to you,

09:47 10   whether you agree with it or not.  Even if you disagree with

11   one or more of the rules of law or don't understand the reasons

12   for them, you are bound to follow them.  This is a fundamental

13   part of our system of government by law rather than by

14   individual views of the judge or jurors who have the

15   responsibility for deciding a case.

16        In following my instructions, you must follow all of

17   them and not single out some and ignore others.  They are all

18   equally important.  Consider these instructions as a whole and

19   apply them sensibly and faithfully in your deliberations.

09:48 20        All of my instructions are about the law you must

21   apply.  I do not mean any of my instructions to be understood

22   by you as a comment by me on the facts or on the evidence in

23   this case.  The lawyers were allowed to comment during their

24   arguments on some of these rules of law, but if what they said

25   about the law differs in any way from my instructions, you must

1    be guided only by the instructions on the law as I say them.

2            To help you understand and remember these instructions

3    on the law, I'll divide them into three parts:  First, opening,

4    general instructions intended to guide you throughout your

5    deliberations; second, instructions about the claims and

6    possible damages about questions you will be asked to answer as

7    stated in the verdict form and about the law you must apply in

8    considering these questions; and third, some general

9    instructions about procedures during your deliberations.

09:49 10           In these instructions in written form, and I'll give

11   it to you later in written form, I've used headings.  These

12   headings are only for the purposes of organization of these

13   instructions.  It is the substance of the instructions taken as

14   a whole that shall govern your deliberations.  Throughout these

15   instructions I shall refer to the plaintiff in this case as the

16   plaintiff or Dr. Cheng.  I shall refer to the defendant in this

17   case as the defendant or Dr. Romo.

18           Your verdict must be based solely upon the evidence

19   and according to the law.  In reaching your decision as to

09:50 20   whether Dr. Cheng has sustained his burden of proof, it would

21   be improper for you to consider anything that is not evidence.

22   You may not base your verdict on any personal feelings,

23   prejudice, or sympathies you may have about the parties,

24   Dr. Cheng or Dr. Romo, or about the nature of the claims

25   alleged.

1          The evidence in this case consists of the sworn

2     testimony of witnesses, both on direct and cross-examination

3     and redirect and recross-examination; the exhibits that have

4     been received into evidence; and any facts to which the parties

5     have agreed.

6          Certain things are not evidence.

7          Arguments and statements by the lawyers are not

8     evidence.  The lawyers are not witnesses.  What they say in

9     their opening statements and in closing arguments is intended

09:50 10     to help you interpret the evidence but it is not evidence.  If

11     the facts as you remember them from the evidence differ from

12     the way the lawyers have stated them or the way the Court has

13     referenced them, your collective memory of the facts should

14     control.

15          Questions by the lawyers standing alone are not

16     evidence.  Again, the lawyers are not witnesses.  It's the

17     question and the witness' answer taken together that is the

18     evidence.

19          Objections by lawyers are not evidence.  Lawyers have

09:51 20     a duty to their clients to object when they believe a question

21     is improper under the rules of evidence.  You should not be

22     influenced by any objection or by my ruling on it, and you

23     shall not -- you should not speculate or guess about what the

24     answer might have been or what an exhibit might have said.

25          Anything that I have excluded from evidence or ordered

1    struck from the record and instructed you to disregard is not

2    evidence.

3           Anything you may have seen or heard when the court was

4    not in session is not evidence.  You are to decide the case

5    solely on the evidence received at trial.

6           Also, during the course of the trial I may have made

7    comments to the lawyers or spoken to a witness concerning the

8    manner of his testifying.  Do not assume from anything that I

9    may have said that I have any opinion concerning any of the

09:52 10   issues in this case.  Except for my instructions to you on the

11   law, you should disregard anything I may have said during the

12   trial in arriving at your own findings as to the facts.

13          Jurors, there are two kinds of evidence: direct and

14   circumstantial.  Direct evidence is evidence that directly

15   addresses the truth of a fact, such as testimony from an

16   eyewitness that a witness saw something.  Direct evidence can

17   be a simple assertion by someone, for example, it's raining

18   outside.  That is a statement of a fact observed.  If you

19   thought that the person who said that to you was truthful and

09:52 20   had a sufficient basis for knowing what the weather was like

21   outside, you could accept the statement as direct evidence that

22   it is raining outside.  Alternatively, if you doubted the

23   reliability of the statement, you could reject it.

24          Circumstantial evidence is indirect evidence, that is,

25   proof of a fact or facts from which you can draw the inference

by reason and common sense that another fact exists, even though it has not been proved directly.  To illustrate an example of circumstantial evidence, let's return to the prior example regarding the weather outside.  Suppose that instead of having someone report to you about the weather conditions, someone came in from outside wearing a wet raincoat and shaking off water from an umbrella.  Without any words being spoken, that is, without any direct statement or assertion being made, an observer might conclude that it was raining outside.  The observer would have had some direct evidence to consider, the observation of the wet raincoat and a dripping umbrella. Thinking about those pieces of direct evidence might lead the observer to draw a conclusion or an inference about an unobserved fact: that is was raining.

You are entitled to consider both kinds of evidence. The law permits you to give equal weight to both or to give greater weight to one or the other.  It remains for you to decide how much weight to give to any evidence.

Although you may consider only the evidence presented in the case, you are not limited to the plain statements made by witnesses or contained in documents.  In other words, you're not limited solely to what you saw and heard as the witnesses testified.  You are also permitted to draw reasonable inferences from the facts if you believe those inferences are justified in light of common sense and personal experience.  An

1  inference is simply a deduction or a conclusion that may be

2  drawn from the facts that have been established.  Any inference

3  you draw must be reasonable and based on the facts as you find

4  them.  Inferences may not be based on speculation or

5  conjecture.

6          There are different categories of evidence that you

7  have before you.  The evidence included exhibits, witness

8  testimony and -- exhibits and witness testimony.  Let me

9  instruct you about each of these forms of evidence.

09:55 10         First, you have a number of exhibits.  You will have

11  the paper copies of all the exhibits that have been introduced

12  in evidence during the course of the trial with you in the jury

13  room.  Most of these exhibits have been shown to you in the

14  course of the presentation of evidence while others, I believe,

15  have not.  You will have all of the exhibits admitted in

16  evidence, both those that have been discussed and displayed and

17  those that have not.  You may consider the exhibits and give

18  them whatever value or significance in your deliberation as you

19  think is appropriate.

09:55 20         In addition to exhibits, you have the testimony of

21  witnesses.  You do not have to accept the testimony of any

22  witness if you find the witness not credible.  You must decide

23  which witnesses to believe and which facts are true.  To do

24  this, you must look at all the evidence, drawing upon your

25  common sense and personal experience.  You may believe

everything a witness says or only part of it or none of it.  It
is entirely up to you.

You may take into consideration such factors as the
witness' conduct and demeanor while testifying, their apparent
fairness or any bias they may have displayed, relation to
either party, any interest they may have in the outcome of the
case, any prejudices that they may have shown, their
opportunity for seeing and knowing the things about which they
have testified and the reasonableness or unreasonableness of
the events that they have described.

The following are the kinds of questions you may want
to consider in evaluating a witness' credibility:  Did the
person seem honest?  Did he or she have some reason not to tell
the truth?  Did the witness have an interest in the outcome of
the case?  Did he or she gain any personal advantage by
testifying in this case?  Did the witness seem to have a good
memory?  Did the witness in his testimony differ from his or
her earlier testimony or from the testimony of other witnesses?
Was the witness' testimony different on cross and direct
examination?  What was the witness' manner while testifying?
These are some, but, of course, not all, of the kinds of things
that will help you decide how much weight to give to what each
witness said.

The mere number of witnesses or exhibits or the length
of the testimony has no bearing on what weight you give the

1    evidence or on whether you find the burden of proof has been

2    met.  Weight does not mean the amount of evidence.  Weight

3    means your judgment about the credibility and the importance of

4    the evidence.

5         The testimony of a witness may be discredited or

6    impeached by showing that he or she previously made statements

7    that are inconsistent with his or her present testimony.  If a

8    witness is shown to have given inconsistent statements

9    concerning any material matter, you have a right to distrust

09:58 10  that witness' testimony in other respects.  You may reject all

11   of the testimony of that witness or give it such credibility as

12   you may think it deserves.

13        Sometimes, of course, people make innocent mistakes,

14   particularly as to unimportant details.  Not every

15   contradiction or inconsistency is necessarily important.

16   Again, you alone are the judges of the witnesses' credibility.

17        Some prior inconsistent statements may be used for

18   purposes other than impeachment.  If you find that a witness

19   has made inconsistent statements under oath on an earlier

09:58 20  occasion, such as in a deposition, you may consider that

21   earlier statement for its truth or falsity the same as any

22   testimony at trial.

23        A particular item of evidence is sometimes received

24   for a limited purpose only; that is, it can be used by you only

25   for one particular purpose and not for any other purpose.  I've

1    told you when that's occurred and instructed you on the

2    purposes for which the item can and cannot be used.

3         As I indicated at the beginning of trial, if you

4    recall, you were permitted to take notes, but, again, some

5    cautions apply as you begin your deliberations.  You should

6    bear in mind that not everything that is written down is

7    necessarily what was said.  Thus, when you return to the jury

8    room to discuss the case, do not assume simply because

9    something appears in somebody's notes that it necessarily took

09:59 10   place in court.  Notes are an aid to recollection, nothing

11   more.  The fact that something is written down does not mean

12   that it is necessarily accurate.  Your collective memory of the

13   evidence, not any of your notes, controls.

14        As I instructed you at the beginning of this case as

15   well, you will not be given a transcript of this trial.  The

16   court reporter, Ms. Joyce, has a difficult job, and it's a

17   time-consuming task to take a raw record, which she's creating,

18   and turn it into a final transcript.  It's not possible to

19   create a transcript in time for deliberations.  Since you will

10:00 20   not have a transcript, you should rely, as I've said before, on

21   your collective memory of the evidence.

22        The plaintiff, Dr. Cheng, has the burden of proving

23   every element of his claims by a preponderance of the evidence.

24   If you conclude that Dr. Cheng has failed to establish his

25   claims by a preponderance of the evidence, you must decide

1   against him.

2          To establish something by a preponderance of the

3   evidence means to prove that it is more likely true than not

4   true.  It means that such evidence, when considered and

5   compared with that opposed to it, has more convincing force and

6   produces in your mind the belief that what is sought to be

7   proved is more likely true than not true.  To put it

8   differently, as I said at the beginning of the trial, if you

9   were to put Dr. Cheng and Dr. Romo's evidence on opposite sides

10:01 10   of the scales, Dr. Cheng's evidence would have to make the

11   scales tip somewhat to his side.  In determining whether any

12   fact in issue has been proved by a preponderance of the

13   evidence in this case, you may consider the testimony of all

14   witnesses and all exhibits received in evidence, regardless of

15   who may have introduced them.  Whether a party has sustained

16   its burden of proof does not depend upon the number of

17   witnesses it has called or upon the number of exhibits it has

18   offered, but instead upon the nature and quality of the

19   evidence presented.

10:01 20          Although the burden is on Dr. Cheng to prove his

21   intentions by a preponderance of the evidence, this rule does

22   not, of course, require proof to an absolute certainty, nor is

23   proof beyond a reasonable doubt or by clear and convincing

24   evidence required.  As to all of the issues in this case, the

25   standard for defining the burden of proof is the preponderance

1    of the evidence standard.

2          I will now summarize the claims and explain the

3    applicable law.

4          In this case, the plaintiff, Dr. Cheng, has brought

5    two claims against the defendant, Dr. Romo.  I'll address each

6    of these claims.  To prevail on each claim, Dr. Cheng, as I

7    said, must prove each element of each claim by a preponderance

8    of the evidence.

9          The first claim that Dr. Cheng asserts against

10:02 10   Dr. Romo and must prove by a preponderance of the evidence is

11   that Dr. Romo has violated the Stored Communications Act, Title

12   18, United States Code, Sections 2701(a) and 2707(a).  To

13   violate the Stored Communications Act, a person must

14   intentionally access without authorization a facility through

15   which an electronic communication service is provided or

16   intentionally exceed an authorization to access and thereby

17   obtain, alter, or prevent authorized access to an electronic

18   communication while it's in electronic storage in such system.

19   A "facility" includes a remotely accessed e-mail computer

10:03 20   server.  An "electronic communications service" includes an

21   e-mail service.  An "electronic communication" includes e-mail.

22   "Electronic storage" includes the medium in which e-mails are

23   stored in the e-mail account.  For Dr. Cheng to prevail on his

24   Stored Communications Act claim in this case, he must prove by

25   a preponderance of the evidence that Dr. Romo knowingly or

1  intentionally:

2          1, accessed a facility through which an electronic

3  communication service is provided; and

4          2, did so without authorization or in excess of her

5  authorization; and

6          3, obtained access to an electronic communication

7  while it was in electronic storage in that system.

8          The first element of this claim is that Dr. Romo

9  knowingly or intentionally accessed a facility through which an

10:04 10  electronic communication service is provided.

11          An act is done knowingly or intentionally if it is a

12  voluntary act and if one's conduct or the result of one's

13  conduct is one's conscious objective.  An act is not knowing or

14  intentional if is the product of inadvertence, mistake or

15  accident.

16          If you find that the first element of the Stored

17  Communications Act claim is met, the second and third elements

18  that Dr. Cheng must prove are that Dr. Romo did so knowingly or

19  intentionally without authorization, or knowingly and

10:04 20  intentionally exceeded any authorization that was given, and

21  obtained access to an electronic communication while it was in

22  electronic storage in that system.  To "exceed authorization"

23  means to access a computer without authorization, but to use

24  such access to obtain information in the computer that one is

25  not entitled so to obtain.

1        "Authorization" is permission to do something.

2   Authorization or lack of authorization may be implicit rather

3   than explicit.  That is, a person may be able to infer that he

4   or she is authorized or not authorized to do something based on

5   the facts and circumstances.  The question of whether Dr. Romo

6   was authorized to access Dr. Cheng's e-mail account, and if so,

7   the extent of that authorization are questions for you, the

8   jury, to decide based upon the evidence presented during trial

9   and the reasonable inferences that you can draw from that

10:05 10  evidence.

11       Once you establish whether Dr. Romo had authorization

12   to access Dr. Cheng's e-mail, and if so, the extent of that

13   authorization, you must then consider whether Dr. Cheng has

14   shown by a preponderance of the evidence that Dr. Romo accessed

15   Dr. Cheng's e-mail knowing or with the intent that she did not

16   have authorization, or knowing or with the intent that she was

17   exceeding her authorized access.  You shall make this

18   determination based on the evidence in the record, including

19   the testimony that you have heard and reasonable inferences to

10:06 20  be drawn from the evidence.

21       Jurors, the second claim that Dr. Cheng asserts

22   against Dr. Romo is a claim of invasion of privacy under the

23   Massachusetts Privacy Act, Massachusetts General Law, Chapter

24   214, Section 1B.  The Massachusetts Privacy Act provides that a

25   person shall have a right against unreasonable, substantial or

1    serious interference with his privacy.  The statute protects

2    individuals from disclosure of facts that are of a highly

3    personal or intimate nature when there exists no legitimate or

4    countervailing interest.  To prevail on this claim, Dr. Cheng

5    must prove by a preponderance of the evidence that Dr. Romo's

6    conduct, namely, her alleged access of Dr. Cheng's e-mail and

7    subsequent dissemination of same:

8              1, was unreasonable;

9              2, constituted a substantial or serious interference

10:07 10   with Dr. Cheng's privacy.

11         When determining the reasonableness of an intrusion,

12   you may consider and balance any legitimate interest against

13   the seriousness of the intrusion on privacy.  In considering

14   what a legitimate -- what is a legitimate countervailing

15   interest, you should consider whether the proffered reason for

16   the conduct constituted an objectively supportable reason to

17   perform the actions.  To determine what conduct is

18   unreasonable, you may rely on your collective experience,

19   reason, common sense, and understanding of human behavior.

10:07 20         To determine whether conduct constitutes a substantial

21   or serious interference, you must consider whether the conduct

22   intruded on Dr. Cheng's expectations of privacy and whether

23   those expectations were reasonable.  The strength of

24   Dr. Cheng's privacy interest depends upon the surrounding facts

25   and circumstances.

1          In our industrial and densely populated society, some

2     intrusions into one's personal atmosphere are inevitable.

3     Thus, not every intrusion will constitute a legally

4     recognizable violation of privacy.  The law does not provide a

5     remedy for every annoyance that occurs in everyday life, but

6     does recognize a remedy for actions that create unreasonable,

7     serious or substantial interference when there is a (sic.)

8     legitimate countervailing interest.

9          If you find that Dr. Cheng has proven each element of

10:08  10    his first claim, the Stored Communications Act claim, by a

11    preponderance of the evidence, you shall then consider the

12    issue of damages.

13         Dr. Cheng seeks recovery of his actual or compensatory

14    damages.  If you find a preponderance of the evidence that

15    Dr. Romo violated the Stored Communications Act, then you may

16    award any actual damages suffered by Dr. Cheng.

17         Actual damages are those incurred by Dr. Cheng because

18    of Dr. Romo's access of his e-mail account without

19    authorization or exceeding the scope of authorization.  Actual

10:09  20    damages for this claim, the stored communications claim, do not

21    extend his subsequent publication or dissemination of

22    information but stem from the damages, if any, arising from the

23    unauthorized access itself.  Dr. Cheng must prove actual

24    damages by a preponderance of evidence.

25         If you find that Dr. Cheng has proven a violation of

1    the Stored Communications Act and that he's entitled to any

2    actual compensatory damages, that Act provides that such award

3    of actual damages must not be less than a thousand dollars for

4    each violation of the Act.  Dr. Cheng must show by a

5    preponderance of the evidence the number of violations of the

6    Stored Communication Act that occurred.

7            Regardless of whether you award actual damages, you

8    should consider whether to award punitive damages to Dr. Cheng.

9    Punitive damages are not meant to compensate an injured party

10:10 10   but are to punish the wrongdoer and to deter him or her and

11   others from similar conduct.  You may award punitive damages

12   only if Dr. Cheng has shown by a preponderance of the evidence

13   that Dr. Romo accessed Dr. Cheng's e-mail without authorization

14   or exceeding authorization, and such access was willful or

15   intentional.  Even if Dr. Cheng has made that showing, punitive

16   damages are not mandatory.  Whether to award Dr. Cheng punitive

17   damages and the amount of those damages are within your sound

18   discretion.

19           Factors you may consider in determining the amount of

10:10 20   the award of punitive damages include the degree of

21   reprehensibility of the conduct and the magnitude of harm

22   caused as compared to the punitive damages awarded.  When

23   considering the degree of reprehensibility, you should consider

24   whether the harm was physical rather than economic; whether the

25   conduct evinced an indifference to or a reckless disregard of

1    the health or safety of the others; whether the target of the

2    conduct had financial vulnerability; whether the conduct

3    involved repeated actions or was an isolated incident; and

4    whether the harm resulted from intentional malice, trickery or

5    deceit or mere accident.  Punitive damages should be awarded

6    only if Dr. Romo's culpability is so reprehensible to warrant

7    the imposition of further sanctions to achieve punishment or

8    deterrence in addition to any compensatory damages award.  If

9    after these considerations you determine that the award of

10:11 10   punitive damages is appropriate, you may also consider the

11   financial condition of the defendant, so that such award may,

12   on the one hand, be punitive and deterrent, but on the other

13   hand, not lead to the defendant's financial ruin.

14        If Dr. Cheng has proven that Dr. Romo's conduct

15   constituted an unreasonable and substantial or serious

16   interference with his privacy, he is entitled to an award of

17   monetary damages.  In assessing damages you may consider and

18   award damages to compensate Dr. Cheng for the following:

19        (a) the harm to his interest in privacy resulting from

10:12 20   the invasion;

21        (b) his mental or emotional distress proved to have

22   been suffered if it is of a kind that normally results from

23   such invasion; and

24        (c) such economic loss of which Dr. Romo's conduct was

25   a substantial factor in bringing about, and which was

1    reasonably foreseeable to Dr. Romo at the time of the invasion

2    of privacy.

3         Damages for mental suffering are recoverable without

4    the necessity of showing actual physical injury, and damages

5    may be awarded for mental suffering alone without either

6    physical harm or pecuniary loss resulting from that invasion.

7         Both parties have hired lawyers to represent them in

8    this case.  However, in connection with considering any damages

9    issue in this case, you may not include any amount to

10:13 10  compensate a party for its reasonable costs relating to the

11   litigation and the attorney's fees he might have paid.

12        You will soon begin your deliberations.  Please listen

13   to these special instructions and my final ones to you, jurors,

14   about those deliberations and communication with the Court

15   during your deliberations.

16        When you retire, you will discuss the case with the

17   other jurors to reach agreement if you can do so.  As your

18   first order of business, you should select a foreperson.  You

19   should permit your foreperson to preside over your

10:13 20  deliberations, and your foreperson will speak for you here in

21   court.  Your verdict as to each count must be unanimous, that

22   is, all of you must agree on the verdict.

23        Each of you must decide the case for yourself, but you

24   should do so only after considering all of the evidence,

25   discussing it fully with the other jurors, and listening to the

views of the other jurors.  Do not be afraid to change your
opinion if you think you are wrong, but do not come to a
decision simply because other jurors think it is right.

It is important you reach a verdict if you can do so
conscientiously.  You should not hesitate to reconsider your
views from time to time and to change them if you are persuaded
that this is appropriate.

It is important that you attempt to return a verdict,
but of course, only if each of you can do so after having made
your own conscientious determination.  Do not surrender an
honest conviction as to the weight and the effect of the
evidence simply to reach a verdict.

I want to explain to you now what is called a verdict
form.  This is simply the written notice of the decision you
will reach in this case.  This is also a document you will have
in the jury room.  It asks you a series of seven questions.
The first two ask as to each of the counts whether or not you
find that Dr. Cheng met his burden of proving by a
preponderance of the evidence that Dr. Romo:

1, violated the Stored Communications Act; and

2, whether he's made his proof that she violated the
Massachusetts Privacy Act.

It then instructs you that if you answered "yes" to
either or both of questions 1 and 2, then you're to proceed to
the other questions, which are about damages.  If you answered

"no" to both questions, then you would simply have the

foreperson sign and date the verdict form.

The remaining questions that start with number 3

concern damages.  Number 3 asks you if you find that Dr. Cheng

has proved by a preponderance of the evidence that he suffered

actual damages as a result of the conduct of Dr. Romo, yes or

no.

Number 4 is, if you answer "yes" to number 3, what sum

of money, if any, will fairly and adequately compensate

Dr. Cheng for his actual damages?  And then it leaves a space

for you to state the amount of damages, if any, in a dollar

amount and to write it out.

4A and 4B are subsets of 4 and ask you to break down

any amount that you put in 4 into two categories.  If you

awarded any actual damages in response to question 4 above,

indicate what portion of that award listed above, if any, was

to compensate Dr. Cheng for his actual damages for the

unauthorized access or access in excess of authorization of his

e-mail account by Dr. Romo.  And it lists a place for you to

put that number, if any, a number and write it out.

4B asks if you awarded any actual damages in response

to question 4 above, indicate what portion of that award listed

above, if any, was to compensate Dr. Cheng for the subsequent

dissemination of e-mails from his e-mail account by Dr. Romo,

and it lists a space, again, for an amount.

Number 5, if you answered "yes" to question 1, which
2      was the question about whether Dr. Cheng has met his burden of
3      proving the Stored Communications Act against Dr. Romo, it asks
4      you to state the number of times that Dr. Romo violated the
5      Stored Communications Act, and it lists a place for you to
6      write the number and then write out the number in words.

7           Question number 6 asks:  Do you find that Dr. Cheng
8      proved by a preponderance of the evidence that Dr. Romo
9      willfully and intentionally accessed Dr. Cheng's e-mail account
10:18 10    without authorization or in excess of authorization?  And it
11     leaves a place to answer yes or no.

12          The last question, number 7:  If you answered "yes" to
13     question 6, what, if any, punitive damages do you award to
14     Dr. Cheng?

15          And at the end of the verdict form, there's a place
16     for the foreperson to sign his or her name and to date the
17     form.

18          Jurors, after you have reached a unanimous agreement
19     on a verdict, your foreperson will fill out the form I've just
10:18 20    described that will be given to you, sign it and date it and
21     advise the court security officer outside your door or
22     Ms. Hourihan that you're ready to return to the courtroom.
23     After you return to the courtroom, the foreperson will deliver
24     that verdict form, as directed by Ms. Hourihan, in open court.
25          If it becomes necessary during your deliberations to

1    communicate with me, you may send, through the court security

2    officer, a note signed by your foreperson or by one or more

3    members of the jury.  No member of the jury should ever attempt

4    to communicate with me on anything concerning the case except

5    by a signed writing, and I will communicate with any member of

6    the jury about anything concerning the case only in writing or

7    orally here in open court.

8              If you send out a question, I'll consult with the

9    parties as promptly as possible before answering it, which may

10:19 10   take a little time.  You may continue with your deliberations

11   while waiting for an answer to any question.

12             When you're communicating with me, please do not tell

13   me or anyone else how the jury stands numerically or toward

14   which decision the jury is leaning.

15             And I need to take a moment just to consult with

16   counsel at sidebar.

17             (At sidebar on the record.)

18             THE COURT:  Before I hear you your objections, I just

19   want to note on page 9, in terms of the category of evidence as

10:24 20   I was reading, I realized there was still a reference to

21   depositions in stipulations, so when I read that, I said

22   "including exhibits and testimony."  So my law clerk has fixed

23   that.

24             Counsel.

25             MR. BROOKS:  Yes, your Honor.  The instruction on page

1    20 under "authorization," we object to the instruction that

2    Dr. Romo had to know or have the intent that she did not have

3    authorization or had to know that she was exceeding her

4    authorized access.  We've discussed that.

5         THE COURT:  Duly noted, counsel.

6         MR. BROOKS:  On page 23 under "actual damages," we

7    object to the instruction that actual damages did not extend to

8    subsequent publication or dissemination of information.

9         THE COURT:  Okay.  Duly noted.  And we've discussed

10:24 10   that before, counsel.

11        MR. BROOKS:  On page 24, statutory damages, we object

12   to the instruction you need actual damages in order to get the

13   statutory damages.

14        THE COURT:  We've discussed that, duly noted.

15        Mr. Cavanagh.

16        MR. J. CAVANAGH:  Yes, your Honor.  On page 18, our

17   objection is the one we discussed this morning, due to the

18   highly technical terminology in the statute and the

19   definitions.

10:24 20        THE COURT:  Okay.  Duly noted.  I know you're

21   preserving your objection.

22        MR. J. CAVANAGH:  Page 20, I believe the Court may

23   have said in the last sentence to the -- of the first paragraph

24   to "exceed authorization" means to access a computer without

25   authorization in its review of the instructions, but we just

```
 1   note -- I know they're going to get written instructions, just
 2   for the record.
 3           Same on page 22, I believe --
 4           THE COURT:  I think I said it correctly, but I think
 5   it's very clear in the written instructions, and it's also very
 6   clear on the verdict form.
 7           MR. J. CAVANAGH:  Okay.
 8           And then on page 22, I believe the Court may have
 9   omitted the word "no" in the last sentence of that instruction
10   when it was read.  The very last line of the instruction.
11           (Pause.)
12           THE COURT:  Okay.
13           MR. J. CAVANAGH:  When you read it, you may have
14   missed the word "no."
15           THE COURT:  Do you have any memory of that?
16           MR. BROOKS:  No, that sounded right to me.
17           MR. BERK:  I believe he's correct, your Honor.
18           THE COURT:  All right.  I can read it -- counsel, I
19   can read it again.
20           MR. J. CAVANAGH:  That's fine.
21           THE COURT:  Okay.
22           MR. J. CAVANAGH:  And then on page 23, this is just an
23   objection because to be consistent with our position and the
24   motions in limine where we said that there's that Supreme Court
25   case of F.A.A. v. Cooper under the Privacy Act that required
```

1    proof of pecuniary damages are limited to recovery of actual

2    damages.  And we argued there was 1st Circuit law to which one

3    might conclude that the Stored Communications Act should be

4    interpreted the same way, so that actual damages would only

5    cover pecuniary harm.  And that's the basis of our objection to

6    page 23.

7                    THE COURT:  Okay.

8                    Okay.  Duly noted.

9                    Counsel, I guess I'll just -- in terms of the -- what

10   you said on page 22, I'll just refer, again, to the second

11   claim and I'll read the paragraph -- I'll just read -- it's a

12   small paragraph, I'll just read it again.

13                   MR. BROOKS:  That's fine.

14                   MR. J. CAVANAGH:  Sure.

15                   THE COURT:  Thank you.

16                   (End of discussion at sidebar.)

17                   THE COURT:  Jurors, before I give you my final

18   instruction, I just want to go back and read you one part

19   because I may have omitted a word from reading it to you.  It's

20   correct in the written version that you're going to get, but

21   just in case I misspoke, I want to read the last section in

22   regards to my instructions to you about the Massachusetts

23   Privacy Act claim.

24                        In our industrial and densely populated society, some

25   intrusions into one's private sphere are inevitable.  Not every

intrusion will constitute a legally recognizable violation of

privacy.  The law does not provide a remedy for every annoyance

that occurs in everyday life but does recognize a remedy for

actions that create unreasonable, serious, substantial

interference where there is no legitimate or countervailing

interest.

Jurors, I understand I may have omitted the word "no"

before when I said it, so in an abundance of caution, I just

wanted to read you the entire paragraph again.

Jurors, it is now time for the case to be submitted to

you.  I will submit to you, as I said, a written copy of this

charge when you go to the jury room.  I want to caution you,

however, not to dwell on any particular portion of it, if you

decide to review the written charge at all, because you must

consider these instructions as a whole and not just one

individual particular instruction.

You also will get the exhibits and the verdict form.

You may commence your deliberations.  All of you who

are the jury must be together at all times when you are

deliberating.

If you need a recess for any purpose, your foreperson

may declare a recess.  Do not discuss the case during a recess

during your deliberations.  All of your discussion of the case

should occur only when you are all together and your foreperson

has indicated that deliberations may proceed.  This should be

```
 1    your procedure so that everyone in the jury has an equal

 2    opportunity to participate and to hear all of what other

 3    members of the jury have to say.

 4            You may go to the jury room and commence your

 5    deliberations.

 6            Thank you.

 7            THE CLERK:  All rise.

 8            (Jury left the courtroom.)

 9                    *   *   *   *   *   *   *   *   *   *

10                    - - - - - - - - - - - -

11                        CERTIFICATION

12            Certify that the foregoing is a correct transcript of

13    the record of proceedings in the above-entitled matter to the

14    best of my skill and ability.

15

16

17

18    /s/Debra M. Joyce              March 7, 2014
      Debra M. Joyce, RMR, CRR       Date
19    Official Court Reporter

20

21

22

23

24

25
```